## Citizens' Union National Bank v. Terrell et al.

## Cunningham v. Same.

(Decided March 8, 1932.)

WILLIAM BULLITT, LEO T. WOLFORD and BRUCE & BULLITT for appellant Citizezns' Union Nat. Bank.

SQUIRE R. ODGEN and GORDON & LAURENT for appellant Cunningham.

BURNAM & GREENLEAF and G. MURRAY SMITH for appellee Terrell.

JOHN NOLAND for appellee State Bank.

Opinion of the Court by Creal, Commissioner— Affirming in part and reversing in part.

Two men bearing the name of Joe Cunningham lived in Louisville. One, as we gather from the evidence, was employed in the office of the Kentucky Rock Asphalt Company in the Marion E. Taylor building, and other by Harbison-Gathright. Out of this identity of names grew a chain of events which culminated in this litigation.

One of these parties who is designated in briefs as the "right" Joe Cunningham owned a one-sixth interest in certain real estate in Madison county. In an action styled George Wainscott v. Nannie L. McBroom, Etc., instituted in the Madison circuit court, this real estate was sold for a division of proceeds among the parties in interest and "right" Joe Cunningham was made a party defendant in that action. Involved in the action was a claim of plaintiff against the defendant Mrs. McBroom for rents, and she was asserting a claim for improvements which she, in good faith, had made upon the real estate. These claims were referred to the master commissioner who heard proof as to their merit and filed a report disallowing each of them. This report was confirmed by the chancellor, and plaintiff was granted an appeal. Stephen D. Parrish, an attorney of Richmond, who represented Mrs. McBroom in this litigation, prepared and forwarded to Joe Cunningham, Louisville, a writing or pleading to be filed in the action, waiving claim for rents, against Mrs. McBroom and accepting and approving the judgment of the court and asking that he not be made a party to any appeal from the lower court's

18

judgment or orders. This pleading was either sent to the address of the Joe Cunningham, who was not a party to the action and who is designated as "wrong" Joe in briefs, or it in some way came into his hands. The paper is signed "Joseph Cunningham" and was acknowledged before a notary public of Jefferson county, and thereafter returned to Mr. Parrish and filed in the action. On November 13, 1922, "right" Joe wrote Mr. Parrish the following letter:

"Marion E. Taylor Building

November 13, 1922.

"Mr. Stephen D. Parrish, Richmond, Ky.

"Dear Sir: Relative to your letter of recent date in which you state that you have written me twice in the last few weeks relative to the position I intend to assume on the appeal of George Wainscott, I wish to say that I have not received any recent communications from either you or my Aunt, and do not know the nature of the appeal referred to. The last statement I had of the case was to the effect that judgment had been rendered and sale of the property made for distribution to heirs and that there was still pending a suit, brought by Wainscott on behalf of the heirs, claiming rental on the property in question over a period of several years. Further than this I am not acquainted with developments in the case.

"I have stated to you in person, and also to my Aunt, on several occasions that I have no intention of claiming my part of the estate and am only anxious to protect her interest against any claims of Wainscott, and will be very glad to do anything in my power to assist her in this matter. Since my sister is married, I cannot regulate her actions and assume that she has, through her husband, advised you of their stand in the matter.

"Very truly yours. W. J. Cunningham.
"WJC/h"

On November 15, Mr. Parrish, in response to that letter, addressed the following letter to W. J. Cunningham, Louisville, Ky.

"Dear Sir: Your favor of the 13th duly received. I was indeed glad to hear from you. You

speak in such kindly terms of your aunt, Mrs. Mc-Broom, that I have taken the liberty of sending your letter to her. I have not yet heard from Mr. and Mrs. Jackson. The release you signed has been filed in court. All the purchase money had been paid by Mrs. McBroom for the house and lot, and the court has made a deed of conveyance to her. Your part thereof is in the hands of the Master Commissioner and if you have not heretofore received it, you will get it on demand from R. B. Terrell, Master Commissioner, of the Madison Circuit Court, in the case of George Wainscott vs. Nannie L. McBroom, Etc.

"Yours respectfully,

"Stephen D. Parrish, Attorney At Law.

[Added in pen and ink:]

"Your penciled letter of the 14th just to hand, and after I had dictated the above. Mrs. McB's health is as good as one would naturally expect of a person at her age. You must quarrel with her for not writing to you. She is unable to see how to write and for such service, like the Poet Milton, is dependent on others, and on whose convenience you are occasionally forced to wait indefinitely.

"S. D. P."

On November 14, 1922, on stationery of the Hotel Henry Watterson, "wrong" Joe wrote Mr. Parrish the following letter:

"Dear Sir: As I havent heard from you since you sent me those papers to sign and had wrote Mrs. McBroom and recd no answer from either one and I would like to know if everything was satisfactory, and would like to hear from one of you soon. I remain

"Joseph Cunningham

"c/o Harbison Gathright

"4th and Main Street, Louisville, Ky."

Thereafter, on the 18th day of November he addressed to Mr. R. B. Terrell, master commissioner, the following letter:

"Dear Sir: I am Mr. Joseph Cunningham writing you in regards to a settlement in the case of George Wainscott versus Mrs. Nannie L. McBroom

of which Atty Parrish of Richmond write me that settlement has been made, and that Mr. R. B. Terrell is holding the money and for me to write you in Demand for same. Hoping to hear from you soon, I am,

"Yours truly,

"Joseph W. Cunningham.

"c/o Harbison Gathright, 7th and Main,

"Louisville, Ky."

In the meantime an order of distribution was made and entered in the Madison circuit court and the net proceeds found to be due Joe Cunningham were $1,038.05.

On November 20, 1922, the master commissioner made out the following check and voucher attached.

"R. B. Terrell

"Master Commissioner of Madison
Circuit Court

"Richmond, Ky., Nov. 20, 1922.

"Pay to the order of Joe Cunningham $1,038.05
"To

"State Bank & Trust Company
"Richmond, Kentucky

"R. B. Terrell, M. C. M. C. C.

"Do not detach

"No.———Nov. 20th, 1922. Case No. 148.

"Received by R. B. Terrell, Master Commissioner Madison Circuit Court in the case of

George Wainscott       Joe Cunningham
      vs.       1/6 interest
Nannie L. McBroom

"One Thousand and Thirty-eight dollars five cents, ........................................................................$1,038.05.
"———Payee"

This check was placed in an envelope addressed to "Joe Cunningham, c/o Harbison, Gathright, Louisville, Ky.," and was delivered to "wrong" Joe at that address. In due course he presented the check to the Citizens' Union National Bank of Louisville for pay-

ment. He was identified by one of the officers of Harbison-Gathright as the true holder and owner of the check, and as a further indentification he exhibited to the teller the envelope in which the check was sent to him. Thereupon, after indorsing the check and signing the attached voucher, he was credited with $500 on a savings account and the remaining $538.05 on a checking account. The check was forwarded by the Citizens' Union National Bank to the State Bank & Trust Company at Richmond and was by the latter credited to the acount of the Citizens' Union National Bank and charged to the account of the drawer, and, by perforation, stamped, "Paid 11/24/22."

The master commissioner, learning that the check had fallen into the hands of the "wrong" Joe, notified the State Bank & Trust Company of that fact and directed it to refuse payment of the check. On November 27, the State Bank & Trust Company conveyed this information to the Citizens' Union National Bank by telephone and requested the latter not to permit the "wrong" Joe to make further withdrawals from his deposit. At the time, however, he had withdrawn $438 of his checking account.

On May 23, 1925, "right" Joe Cunningham instituted this action in the Jefferson circuit court against R. B. Terrell, State Bank & Trust Company of Richmond, Joe Cunningham, and the Citizens' Union National Bank, asking for a declaration of the rights of the parties, (1) to the sum of $550.05 held on deposit by the Citizens' Union National Bank by the defendant Joe Cunningham; (2) to the possession of the original check now held by the Citizens' Union National Bank; (3) as to the liability of the defendants or any of them to the plaintiff for the sum of $1,038.05, with interest from November 20, 1922, and for judgment for the sum of $1,038.05 with interest from November 22, 1922. By appropriate pleadings setting out in substance the facts as hereinbefore recited the issues were completed.

The cause being submitted on the pleadings, the court adjudged that the Citizens' Union National Bank recover on its cross-petition against the defendant Joe Cunningham (the wrong Joe) the sum of $1,038.05, with interest from November 24, 1922, and that the fund on deposit in that bank in the name of defendant Joe Cunningham amounting to $500 in a savings account and

$50.05 in a checking account be paid over to the bank and applied on its judgment; that the State Bank & Trust Company hold subject to the orders of R. B. Terrell, master commissioner, the amount of $1,038.05 now to his credit to be checked out by him in accordance with the order of the Madison circuit court entered in Wainscott v. McBroom. The claim of plaintiff Joe Cunningham was dismissed, without prejudice to any rights he may have arising under the order of the Madison circuit court in that action. It further adjudged that all other claims involved be dismissed and each party pay their own cost with right of recovery from defendant Joe Cunningham.

The Citizens' Union National Bank filed motion and grounds for a new trial which was overruled, and it has appealed. Plaintiff Joe Cunningham has also appealed, and, upon joint motion of the parties, his appeal has been heard on the record in the appeal of the Citizens' Union National Bank. The two appeals will be disposed of in this opinion.

In a further discussion of this case we shall for convenience refer to the Citizens' Union National Bank as the Citizens' Union and to the State Bank & Trust Company of Richmond as the State Bank.

It is insisted by the Citizens' Union that, regardless of whether the true payee of the check was the "right" Joe Cunningham or the "wrong" Joe Cunningham, it was a holder in due course for value paid by it before notice of any infirmity in the instrument, and, after the check was accepted by the State Bank, it had a right of action against "wrong" Joe Cunningham, appellee Terrell and the State Bank.

On behalf of appellee State Bank, and Terrell, it is argued, in substance (1) that the Citizens' Union cannot recover against either of them under the Negotiable Instrument Act because it dealt with an imposter who had forged the name of the true payee upon the check; (2) that the "right" Joe Cunningham has not been prejudiced by any act of theirs or by the lower court's judgment as the fund due him is still in the Madison circuit court subject to the orders of that court; (3) that appellee Terrell was guilty of no mistake or negligence, and the doctrine of estoppel does not apply as against him because the mistake was made by the attorney who filed the pleadings signed by "wrong" Joe Cunningham

and who thereby empowered the latter to perpetrate the fraud.

Counsel for "right" Joe Cunningham argue that the lower court erred in not giving him judgment against appellee Terrell for $1,038.05, with interest from November 29, 1922; and that both Citizens' Union and the State Bank converted the check belonging to him and each of them is liable to him because of such conversion.

Section 3720b-23, Kentucky Statutes which is section 23 of the Uniform Negotiable Instruments Act adopted by the General Assembly of this state in 1904, reads as follows:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

In the case of Baskett v. Ohio Valley Banking & Trust Co., 214 Ky. 41, 281 S. W. 1022, this court cited with approval Olsgard v. Lemke, 32 N. D. 551, 156 N. W. 102, holding that the word "precluded" in section 23 of the Uniform Negotiable Instruments Act, which is the same as. the quoted section of our statutes, is used as synonymous with estoppel.

While it is not specifically alleged in any of the pleadings that "wrong" Joe Cunningham knew he had no interest in the subject matter of the action in the Madison circuit court, there is ample justification for the assumption of counsel for the other parties that he actually had such knowledge, and that he assumed the role of the real party in interest with the corrupt design to procure and convert to his own use the funds of another. In furtherance of that sinister purpose he indorsed the check and signed the attached voucher with his own name, knowing that he was thereby also signing the name of the true owner thereof. It was none the less a forgery upon his part because incidentally he bore the same name as the real party in interest, nor because the drawer, laboring under the mistaken impression that he was mailing the check to the party entitled thereto, had in fact placed it in the hands of an impostor.

24

The Citizens' Union and Mr. Terrell both acted in the utmost good faith in the entire transaction and were equally free from intentional wrongdoing. They were each the innocent victim of intrigue and duplicity calculated to deceive persons given to the exercise of even more than ordinary care and prudence in commercial transactions. As between these innocent victims of a fraud perpetrated by a third party we are left to determine which shall ultimately bear any loss occasioned thereby.

Under the first part of the quoted section of our statutes, which is in harmony with the general rule prevailing even before the adoption of the statute, one who pays a check under a forged indorsement must, as between himself and the drawer, bear the loss; but the latter part of the section is consonant with a well-recognized exception to the general rule which places the loss upon the drawer where his own acts and conduct invited and made possible the forgery. The exception to the general rule springs from the just and equitable principle recognized in all jurisdictions that, where one of two innocent parties must bear a loss, it must be borne by the one whose conduct made it possible.

Here Mr. Terrell had in his hands a fund due one Joe Cunningham which by order of court he had been directed to pay. He made the check out in the name of the party entitled thereto, but by mistake mailed it to another bearing that name and in care of the firm by which the latter was employed. Thus he made it possible for the impostor, by whose ruse he had been misled, to exhibit the envelope in which the check was mailed and to hold himself out as the true owner and holder of the check and to be so identified by an officer of a well-known business establishment. No matter what the real intentions of the drawer were, he in effect represented to the commercial world that the party into whose hands he placed the check was the true payee, and by his own conduct led others to believe and act upon that representation to their prejudice.

In the case of S. Weisberger Co. v. Barberton Savings Bank, 84 Ohio St. 21, 95 N. E. 379, 381, 34 L. R. A. (N. S.) 1100, the drawer of a check made to discharge an indebtedness to one Max Roth, who was engaged in business at 48 Walker street, New York City, inclosed the check with a letter in an envelope addressed to Max Roth,

48 Walker street, Cleveland, Ohio. A letter carrier finally found a person in Cleveland of the same name as the payee and delivered the letter to him. He was not the person for whom the check was intended, but he indorsed the name of the payee thereon and received payment from an acquaintance who in turn indorsed it to a Cleveland bank. The check bearing subsequent indorsement of banks through which it passed was paid by the drawee bank and charged to the account of the drawer. It was held that the drawer must bear the loss occasioned by the forgery, the court in the opinion saying:

"  .   .   . it appears that neither the depositor nor the bank intended to commit any wrong, and we may apply a rule the substance of which is that, where one of two innocent parties must suffer because of a fraud or forgery, justice imposes the burden upon him who is first at fault and put in operation the power which resulted in the fraud or forgery."

In the case of Pyper et al. v. Climer, 29 Ohio App. 486, 163 N. E. 640, it was held that, under a statute identical with ours (section 23 of the Uniform Negotiable Instruments Act), the payee was precluded from setting up as a defense the forged indorsement of his name on a check where his own conduct invited and caused or made possible the forgery.

In Jung v. Second Ward Savings Bank, 55 Wis. 364, 13 N. W. 235, 42 Am. Rep. 719, Phillip Jung, a depositor of a Milwaukee bank being in Weisbaden, Germany, wrote the cashier of the bank directing him to forward to him the amount of his deposit by draft or such manner as the cashier might deem best so he could draw the money at Frankfort-on-the-Main. Defendant bank drew its bill of exchange on a bank at Frankfort, payable at sight to Phillip Jung and inclosed it in an envelope addressed to him at Weisbaden, Germany. The letter was not delivered to the drawee for whom it was meant, but was delivered by postal authorities to another person of that name who indorsed it and obtained the money thereon. In his action against the bank Jung was denied recovery, the court holding that the bank by mailing the draft properly addressed as directed by him discharged its debt to him.

In a number of cases involving negotiable instruments the doctrine of estoppel has been applied or given

recognition. While none of them have arisen out of facts and circumstances exactly idential to the case here they are in point and have equal application because the same principle is involved in all. Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230, 46 A. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717; Id. 211 Pa. 211, 60 A. 723, 107 Am. St. Rep. 565; Ins. Co. of North America v. Fourth Nat. Bank (D.C.), 12 F. (2d) 100; Exchange Bank v. Weiner (Ind. App.), 170 N. E. 788; Otis Elevator Co. v. First National Bank, 163 Cal. 31, 124 P. 704, 41 L. R. A. (N. S.) 529; Emporia National Bank v. Shotwell, 35 Kan. 360, 11 P. 141, 57 Am. Rep. 171; United States v. National Exchange Bank (C. C.), 45 F. 163; Montgomery Garage Co. v. Manufacturers' Liability Ins. Co., 94 N. J. Law 152, 109 A. 296, 22 A. L. R. 1224 and long list of cases in annotations. Hackett v. First Nat. Bank, 114 Ky. 193, 70 S. W. 664, 24 Ky. Law Rep. 1002, and cases therein cited.

If the facts and circumstances in this case do not estop and preclude Mr. Terrell from setting up and asserting the forged indorsement of the payee's name to the check, it would be difficult indeed to conceive of a case where the drawer of a check would be so estopped and precluded. Clearly it was his own act in unwittingly placing the check in the hands of an impostor bearing the same name as the person for whom it was intended that facilitated and brought about the fraud and forgery. In such circumstances the principles of justice, morality, and sound public policy demand that he and not the party misled by his act and conduct should bear the loss occasioned thereby.

As between the banks, it is manifest that, under the provisions of the quoted section of our statute, the Citizens' Union is not entitled to enforce payment of the check as against the State Bank because of the forged indorsement of payee's name, since it is not made to appear that by any act or conduct of the State Bank, it is precluded from setting up the forgery as a defense to the cross-petition of the Citizens' Union against it. And even if the State Bank had actually transferred the money to the Citizens' Union, it would be entitled to recovery because of the forged indorsement under which it was accepted by the Citizens' Union. Farmers' National Bank of Augusta v. Farmers' & Traders' Bank of Maysville, 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77.

From what we have already said it follows that the Citizens' Union was entitled to judgment against R. B. Terrell for the sum of $488, and upon satisfaction of that judgment he is entitled to be subrogated to the right of the Citizens' Union as against "wrong" Joe Cunningham for that amount. In all other respects the judgment is correct.

As to the appeal of Joe Cunningham (right Joe) the judgment directed that the State Bank hold, subject to the orders of R. B. Terrell, master commissioner of Madison county, the amount of $1,038.05 to be checked out by Terrell in accordance with the orders of the Madison circuit court in the action of Wainscott v. McBroom, and plaintiff Cunningham's petition was dismissed without prejudice to any right he may have under the orders of the court in that action. Unquestionably this judgment fully protects his rights and the Jefferson circuit court properly refused to interfere with the jurisdiction of the Madison circuit court in the enforcement of its judgments and orders.

For the reasons indicated the judgment on the appeal of the Citizens' Union is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion, and the judgment on the appeal of Joe Cunningham is affirmed.

Whole court sitting.