GLENN L. MARTIN COMPANY, use of AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *v.* FIDELITY-BALTIMORE NATIONAL BANK AND TRUST COMPANY

[No. 1, September Term, 1958.]

*Decided October 24, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and OPPENHEIMER, Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*John F. King,* with whom were *Clarence C. Goertemiller, Edwin J. Elmore, Jr., G. C. A. Anderson* and *Anderson, Barnes, Coe & Morrow* on the brief, for appellant.

*Gordon C. Murray* and *J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for appellee.

OPPENHEIMER, J., by special assignment, delivered the opinion of the Court.

This· is an appeal from a ruling of the Superior Court of Baltimore City granting the appellee's motion for summary judgment in a suit by the appellant alleging that the appellee improperly charged against the appellant's account the amounts of six checks on which the payee's indorsements were forged. All the facts upon which the motion for summary judgment was granted are set forth in the pleadings, and the correctness of those facts is not here questioned. No oral testimony was taken.

The nominal plaintiff-appellant (the Martin Company) is a depositor in the bank of the appellee (the Bank), in which it maintains a regular checking account. The suit involves a series of six checks, the first of which was dated in May of 1956, and the last in September of the same year, in the aggregate sum of $33,611.55. Each of the checks was made payable on its face to "The Nelson Company, 1110 Division Street, Baltimore 1, Maryland", and each was mailed to The Nelson Company at the Division Street address. The checks were all indorsed by that company, deposited in the Second National Bank of Towson, and forwarded for collection through the First National Bank of Baltimore to the drawee, the Bank, which charged them to the Martin Company's account.

In fact, all the checks here involved were intended by the Martin Company to be in payment for work performed for it by another company, also called The Nelson Company, which is located in the Standard Oil Building in Baltimore. The Martin Company had done business with each of the two concerns. In October, 1955, it had drawn a check in the amount of $1,184.00 to The Nelson Company of the Division Street address (The Nelson Company #1) against the Martin Company's account with the Bank. This check was mailed to The Nelson Company #1, indorsed by it, and duly charged by the Bank against the Martin Company's account. The series of six checks, beginning in May of 1956, involved in this litigation were intended by the Martin Company to be in payment for work done for it by The Nelson Company of

the Standard Oil Building (The Nelson Company #2), but through some unexplained error of the Martin Company, these checks bore on their face the address of The Nelson Company #1, which indorsed and cashed them. The last of the six checks was dated September 13, 1956. The Martin Company did not discover its error until October and notified the Bank early in that month. At that time all the six checks had been paid to The Nelson Company #1. With each of the checks sent by the Martin Company to The Nelson Company #1, there was enclosed an invoice showing that the check was in payment for work done for the Martin Company by The Nelson Company #2. The Martin Company had a contract of insurance issued by the American Mutual Liability Insurance Company, the equitable plaintiff-appellant, covering the loss herein complained of, and the insurance company paid the Martin Company the total sum of the checks. Two of the six checks were indorsed "The Nelson-Fox Co.", with the name "Fox" blocked out, and were paid by the Bank in the same manner as the other checks.

The appellant contends that the duty of the drawee bank to a drawer depositor is contractual and absolute; that the assertion of forgery is precluded only if the drawer's acts affirmatively induced or were the proximate cause of the drawee bank's breach of contract, and that there are no such facts in the record. The Bank contends that on the facts the Martin Company is estopped from asserting the forged indorsements of the checks, and that, in any case, the equitable appellant, because in its policy of insurance it indemnified the Bank, has no right to maintain this suit.

Section 44 of Article 13 of the Code (1957) provides as follows:

"44. Forged signature; effect of.
"Where a signature is forged, or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature,

unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

Under this section of the Code, which enacts Section 23 of the Uniform Negotiable Instruments Law, the liability of a bank improperly charging forged items to an account of a depositor is absolute, unless the depositor is precluded from setting up the forgery. In *Union Trust Co. v. Soble,* 192 Md. 427, 431, 64 A. 2d 744, this Court said: "We interpret the word 'precluded' in this section to be synonymous with 'estopped'. Estoppel, such as will preclude the drawer of a check from setting up the defense of forgery or want of authority in the indorsement, may arise from any conduct, silence, or laches which misled the bank to its prejudice. *Home Credit Co. v. Fouch,* 155 Md. 384, 396, 142 A. 515."

As between the Martin Company and The Nelson Company #1, it is clear on the record before us that the latter knew when it indorsed the checks that it was not entitled to the proceeds thereof. The invoices mailed with the checks showed that the work for which the checks were given in payment had been done for the Martin Company by The Nelson Company #2. Section 44 of Article 13 of the Code is applicable whether the signatures were forged or whether they were made without the authority of the person whose signatures they purported to be. For the purpose of this decision, we assume, without deciding, that the signatures were forged. On this assumption, the question before us is whether the Martin Company is precluded, *i. e.,* estopped, from asserting the forgery as a defense.

There are many cases construing and applying the preclusion provisions of the Negotiable Instruments Law here involved in actions by drawers against the drawee banks in which a variety of factual situations are involved. See Annotation 39 A. L. R. 2d 641. However, there are relatively few cases in which the question before the Court was whether the drawer of a check is precluded from recovering against the drawee bank which paid the check, notwithstanding a forged indorsement thereon, because of the drawer's negli-

gence in mailing the check to a person of the same name as the payee but at a different address.

In *Citizens' Union National Bank v. Terrell,* 244 Ky. 16, 50 S. W. 2d 60, the drawer of a check payable to "Joe Cunningham", mailed it to the address of a person of that name who was not the person intended by the drawer to be the payee. The Joe Cunningham for whom the check was intended lived in the same city. The wrong Joe Cunningham who received the instrument forged the payee's signature and cashed the check. It was held that the drawer was precluded from asserting the forgery of the indorsement. The Court said, at page 26: "If the facts and circumstances in this case do not estop and preclude Mr. Terrell from setting up and asserting the forged indorsement of the payee's name to the check, it would be difficult indeed to conceive of a case where the drawer of a check would be so estopped and precluded. Clearly it was his own act in unwittingly placing the check in the hands of an impostor bearing the same name as the person for whom it was intended that facilitated and brought about the fraud and forgery. In such circumstances the principles of justice, morality, and sound public policy demand that he and not the party misled by his act and conduct should bear the loss occasioned thereby."

In *Weisberger Co. v. Barberton Savings Bank,* 84 Ohio St. 21, 95 N. E. 379, the drawer was indebted to one Max Roth of New York City. By mistake, he drew his check in the amount of the indebtedness and mailed it to a Max Roth in Cleveland, Ohio. The latter indorsed the check and cashed it with a saloon keeper, who deposited it in his bank. The check was duly presented to the drawee bank, which paid it and charged the amount to the drawer. Judgment for the drawee bank was affirmed. The Court said, at page 31: "In the case at bar, it appears that neither the depositor nor the bank intended to commit any wrong, and we may apply a rule, the substance of which is, that where one of two innocent parties must suffer because of a fraud or forgery, justice imposes the burden upon him who is first at fault and put in operation the power which resulted in the fraud or forgery."

In several cases not directly involving the liability of the drawee bank to the drawer, there are dicta that the drawer is precluded from setting up the forgery of the indorsement of the check when it was mailed, not to the intended payee, but to another person of the same name, at a different address. See *Jones v. Citizens' Nat. Bank of Okmulgee,* 106 Okla. 162, 233 P. 472 and *Washington Loan & Trust Co. v. U. S.,* 134 F. 2d 59. Dicta in other cases are to the effect that, under such circumstances, the drawer is not precluded. See *U. S. v. Union Trust Co.,* 139 F. Supp. 819 (a decision of Judge Watkins in the United States District Court, District of Maryland), and *State Bank of Chicago v. Mid-City Trust and Savings Bank,* 232 Ill. App. 186. Cf. Concurring opinion of Sibley, J., in *Fulton Nat. Bank of Atlanta v. U. S.,* 107 F. 2d 86.

Unlike the case before us, in none of these cases, except in *Fulton Nat. Bk. of Atlanta v. U. S., supra,* which had distinguishing features, was the address of the erroneous payee set forth on the face of the check. Each of the checks here involved was made payable to "The Nelson Company, 1110 Division Street, Baltimore 1, Maryland", which was the correct address of The Nelson Company #1. The checks, through the address which followed the name of the payee on the face of each instrument, identified The Nelson Company #1 as the person to whom payment was to be made and directed the drawee bank to make payments to The Nelson Company of that address. While the Martin Company, as a matter of internal decision, intended to make payment to The Nelson Company #2, the action which it took, insofar as the Bank was concerned, was directly contrary to that intent. That action was more than the negligence considered by the courts in the cases above referred to, for in each of those cases (other than in *Fulton Nat. Bk. of Atlanta v. U. S., supra*) the payee was designated only by name and not by address. In those cases it was only the mismailing of the checks which was erroneous; but in the present case the payee was designated by address, and the address was that of the person who, indorsed the checks and received the proceeds. In the cases above cited, inquiry by the drawee bank might have disclosed

that the person who indorsed the check, while bearing the same name as the intended payee, was not in fact the person whom the drawer intended to be paid. In this case, payment by the Bank to any person other than The Nelson Company #1 would have been inconsistent and in conflict with the designation of the payee on the face of the checks. Each of the checks was indorsed by The Nelson Company #1 in the manner in which the check was made payable, that is, with the Division Street address included as part of the indorsement. A similar check to that company had been drawn by the Martin Company on the Bank in the preceding year, properly indorsed and duly charged to the Martin Company's account. In honoring the indorsements made, the Bank was only complying with the direction given to it on the face of the checks themselves.

The facts here are far stronger on behalf of the drawee Bank than were the facts in *Citizens' Union National Bank v. Terrell, supra,* and *Weisberger Co. v. Barberton Savings Bank, supra.* We do not decide whether we would follow the holding in those cases if the checks here involved had been made payable only to "The Nelson Company", and mailed to the Division Street address, without that address having been incorporated on the face of the checks in the designation of the payee. The facts before us, in our judgment, preclude the setting up of the forgery, because of the identification of the payee by address as well as by name.

The appellant contends that even though the Martin Company were negligent, its negligence does not preclude recovery because the negligence was not the proximate cause of the loss, citing *Home Indemnity Co. v. State Bank of Fort Dodge,* 233 Iowa 103, 8 N. W. 2d 757, and *B. F. Saul Co. v. Rich Wine and Liquor Co.,* 120 A. 2d 208 (Mun. Ct. App. D. C.). In *Home Indemnity Co. v. State Bank of Fort Dodge, supra,* the forgery was the act of an employee of the drawer whom it knew when it hired him to have been a convicted forger. The Court held that the negligence of the drawer was not the proximate cause of the loss sustained by the drawee bank because of the intervening causes of the forgery by the wrongdoer and the negligence of the bank in cashing the check.

In *B. F. Saul Co. v. Rich Wine and Liquor Co., supra,* the Court held that any negligence of the drawer in entrusting checks to an employee who forged checks on a padded pay-roll did not preclude the drawer from asserting the forgery. These cases and other authorities cited by the appellant on analogous facts differ from the case before us, for here the Bank paid the checks to the only person to whom by the Martin Company's unequivocal direction payment could have properly been made. This was not mere laxity in the conduct of the Martin Company's business affairs which, the appellant contends, would not be sufficient to preclude it from recovery against the drawee Bank claiming a forged indorsement. Here, whatever the reason for the Martin Company's mistake may have been, it not only sent the check to The Nelson Company #1 but by adding the address of that company to the name of The Nelson Company, designated and limited the payee to The Nelson Company at that address. The Bank could not properly have disregarded the Martin Company's express direction. The situation is analogous to one in which a drawer mistakenly makes out a check in an amount larger than it intends, and the payee indorses and presents the check for payment; the drawee bank, if it has received no notice of the error, and if there are sufficient funds in the drawer's account, is under the contractual duty to honor the check in the amount set forth on its face.

The appellant further contends that the lower court should have submitted to a jury the question of whether or not, on the facts, the Martin Company's conduct amounts to estoppel. It argues that in cashing the checks, the Bank may have relied, not upon the payee's indorsements, but upon the subsequent guaranteeing indorsements of the forwarding banks, and that if the jury should so find, the appellant would not be precluded from setting up the forgery. This contention would have weight were it not for the fact that the Martin Company, by the form it used in designating the payee, directed the Bank to pay that payee, The Nelson Company #1, and that because of the specific direction, the Bank was obligated to pay the checks upon the indorsements.

It is true that estoppel is based upon reliance upon the con-

duct or silence of the person estopped. *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 338-339, 129 A. 2d 93; *Hardy v. Chesapeake Bank,* 51 Md. 562. However, in some circumstances, the law looks only to the acts of the parties and imposes obligations and recognizes rights, irrespective of individual motivation or intent. In determining what are the requirements of a contract, the law, not the parties, fixes the requirements of a legal obligation. *Ray v. Eurice,* 201 Md. 115, 126-127, 93 A. 2d 272; Williston on *Contracts,* 3rd Ed., Sec. 21. If the act of one party to a contract gives the other a legal defense to the performance of his contractual obligation, the latter can rely upon that defense even though he was ignorant of it and failed to perform for a different reason. *College Point Boat Corp. v. U. S.,* 267 U. S. 12, 69 L. Ed. 490; *Restatement of the Law,* 1 *Contracts,* Section 278. If a depositor fails within a reasonable time to notify the bank of a forgery, the law assumes injury to the drawee from the drawer's delay, and will not consider whether the drawer did or did not sustain injury in fact. *Union Trust Co. v. Soble, supra,* 192 Md. at 433. On the undisputed facts before us, the law does not require the Bank to prove why it performed its obligation to pay the checks to the designated payee according to their express terms.

The appellant refers to the fact that two of the checks which the Bank honored were indorsed "The Nelson-Fox Co.", with the name "Fox" blocked out. It does not, and could not, contend that the rectified indorsement was improper. Inquiry by the Bank only would have disclosed that the designated payee was The Nelson Company, as the corrected indorsement set forth, that it was located at the address given on the face of the check, and that a previous check of the Martin Company to that payee had been indorsed and charged to the Martin Company's account without question.

In view of our holding that the appellant is precluded from setting up the forgery because of the manner in which the checks were made out, it is unnecessary to consider the additional holding of the lower court that the appellant is also precluded by its failure promptly to call the forgeries to the

Bank's attention. Nor, in view of our holding, do we reach the contention of the Bank, made both below and in the argument before us, that the insurance policy under which the appellant paid the Bank also indemnifies the Bank, and that therefore the appellant, by its contract of insurance, has deprived itself of any right it might otherwise have to bring this suit.

*Judgment affirmed, with costs.*