## White v. Commonwealth.

(Decided October 13, 1922.)

### Appeal from Campbell Circuit Court.

1. **Banks and Banking—Giving Check Without Funds.**—A single act may violate both sections 1189 and 1213a of Kentucky Statutes, but the latter section is aimed at a wholly different offense from that denounced by the former. Section 1213a, Kentucky Statutes, is primarily directed against the giving of what is known as "cold checks," whereas section 1189 was intended to apply to the forging, altering or counterfeiting of checks, drafts, bills, notes or certificates of deposit.

2. **Forgery—Evidence.**—Evidence in this case examined and held to support the judgment of conviction, under section 1189, Kentucky Statutes, since it was shown that accused tendered a check in pay-

ment for goods purchased and in exchange for money, knowing it to be forged.

HORACE W. ROOT for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming

J. F. White was indicted in the Campbell circuit court for an offense denounced by section 1189, Kentucky Statutes. He was tried, convicted and sentenced to serve two years in the penitentiary. Several errors are assigned in his motion for a new trial, but on this appeal only two of them are argued: First, that the evidence does not support the verdict; and, second, the offense of which he was convicted is not denounced by section 1189, Kentucky Statutes, under which he was tried, but, if it is an offense, is exclusively within the purview of section 1213a of the statutes.

The facts pertaining to the crime of which appellant is accused are shown in the evidence to be: That, giving his name as John B. Hartman, he presented at the store of William Madden, in Newport, a check purporting to have been drawn by H. Gawronski, of Louisville, Kentucky, on the Liberty Insurance Bank of that city, dated May 28, 1922, payable to the order of John B. Hartman, in the sum of $86.00, and endorsed by the drawee. He desired to purchase a pair of shoes for $12.50, to secure $2.50 in currency, and to take Madden's check for the balance, amounting to $71.00. The transaction was closed pursuant to his request and appellant left the store, but shortly thereafter appeared at the store of the brother of Madden in Cincinnati, and asked to have the check for $71.00 cashed. The brothers became suspicious and stopped payment on the check, and also communicated with Gawronski in Louisville, ascertaining that the check was a forgery. It was further shown on the trial that several months before, appellant had appeared in the store of Gawronski, in Louisville, ostensibly to make a small purchase, and, in the course of conversation, had asked Gawronski if he had any relatives living in Harrisburg, Pennsylvania, stating to him that he knew a man of the same name in Harrisburg, who desired the address in Kentucky of anyone named Gawronski. Thereupon, Mr. Gawronski handed the accused a blank check with his name and business address on it. Gawronski later re-

ceived a letter from appellant, saying that he had lost the check, and asking that another be sent to an address in Harrisburg. This was done and one of these checks was filled out as indicated, purporting on its face to have been given in payment for an electric motor. It is that check that forms the basis of this prosecution.

Appellant testified in his own behalf, but none of the facts we have referred to was denied by him. His only defense was that he was a morphine addict, and for several months had not known what he was doing, and had no recollection whatever of any of the transactions detailed in the Commonwealth's evidence.

Under the evidence as outlined, appellant was convicted of tendering for payment and uttering a forged check under section 1189, Kentucky Statutes. While it is not shown by direct evidence that he actually forged the check, all the circumstances in the record tend to prove that fact. Certainly, there was sufficient evidence to justify the jury in believing that the forgery was committed by him, and, moreover, it is clearly established that he did tender the forged check in payment for the shoes and in exchange for currency, which is exactly what is denounced by section 1189 of Kentucky Statutes. It is plain, therefore, that the evidence supports the finding of guilt.

Neither can we sustain the second contention of appellant, which is that the offense he committed, if any, comes within the provisions of 1213a of Kentucky Statutes, and not 1189, under which latter section he was indicted and convicted. The two cases of Seigel v. Commonwealth, 176 Ky. 772, and 177 Ky. 232, are not in conflict with this conclusion. On the contrary, they fully sustain it. Section 1213a of the Kentucky Statutes applies to a person who, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money, upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer *has not sufficient funds in such bank or other depository for the payment of such check, draft or order in full upon its presentation*, etc. It is conceivable that the same act might offend both sections 1189 and 1213a, but, as was pointed out in the Seigel case, *supra,* section 1213a is aimed at a wholly different offense from that denounced by section 1189, and under section 1213a an essential element of the offense is knowledge on the part of the maker, drawer, utterer or deliv-

erer that the maker or drawer has not sufficient funds in the bank or depository to pay the check. Section 1189, among other things, provides, that if any person shall tender in payment, utter, vend, exchange, barter or demand to have exchanged for money, any forged, erased, altered or counterfeited bill, note, draft, check or certificate of deposit, or the endorsement thereon, knowing same to be forged, counterfeited, erased or altered, he shall be confined in the penitentiary not less than two nor more than ten years. The offense committed by appellant is clearly within the terms of this section of the statutes. We must, therefore, deny the second ground of appeal.

Appellant had a fair trial, and, while it is regrettable that at his advanced age he should suffer the penalty of a statute of this character, the offense was clearly proved and the judgment must be affirmed.