## Estep, et al v. Owens, et al.

(Decided June 16, 1925.)

### Appeal from Johnson Circuit Court.

1. Alteration of Instruments—Material Alteration by Stranger Does Not Render Deed Void if Original Language Can be Shown.—A material alteration by a stranger, without privity of any parties thereto, will not render a deed void, if it can be shown what the language was as it originally stood.

2. Alteration of Instruments—Alterations in .Deed by Grantees' Agent Without Their Authority Does Not Affect Grantees.— Material alterations in a deed, made by grantees' agent after it was signed and before it was recorded, will not affect grantees,

unless done by their authority, and the agent will not be presumed to have such authority merely because he is authorized to receive or deliver instrument.

3. Alteration of Instruments—Alteration in Gas and Oil Royalty Deed Held Not to Render Entire Deed Void, Where Original Language Shown.—Where deed conveying one-eighth of grantors' interest in gas and oil royalties was altered so as to convey grantors' entire interest, but it was not shown that grantees were connected with such alteration, and it was clearly shown what language of deed was as it originally stood, held, that court properly canceled deed only as to seven-eighths interest.

HOWES & HOWES for appellants.

KIRK, KIRK & WELLS and REDWINE & REDWINE for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

A deed is of record in the Johnson county clerk's office dated January 8, 1918, by which Rachel S. Estep and Elzie Estep, her husband, in consideration of $1,000.00 in hand paid, conveyed to George B. Williams, Clayton Strode, G. W. Owens and Miss Kate Keyes "that certain one-eighth of the oil and amount to be paid for gas wells which were reserved by the grantors as royalty in a certain lease executed by them to N. P. Howard, of date March 29, 1917," covering the tract of land on which they resided, containing about two hundred acres. The deed also contains these words:

"The object and intent of this deed is to vest said royalty and all right thereunder in second parties and if the land is not operated under the lease aforesaid, second parties are to have all of the oil and gas thereunder under terms and conditions similar to the lease aforesaid to N. P. Howard, Salyersville, Ky., and that the second parties are to have all of the oil and gas in, on and underlying said land, with the right to operate for same, according to the terms alike in all respects to the lease aforesaid."

On June 30, 1922, Rachel S. Estep and her husband brought this suit to set aside the deed alleging that they had at no time executed, acknowledged or delivered the deed; that they never knew or had any information

of the existence of George B. Williams, Clayton Strode or Kate Keyes until a few days before the suit was filed, when they discovered that the deed was of record, and that they had never executed any deed containing the provision above quoted, and had never received anything except $200.00. The allegations of the petition were controverted. Proof was taken and on final hearing the circuit court entered judgment cancelling the deed except in so far as it conveys to the defendant the undivided one-eighth royalty interest in and to the oil underlying the tract of land therein described, and these words are added:

> "It being the intention of this judgment to set aside and cancel said deed of conveyance in so far as it conveys or purports to convey the undivided seven-eighths interest of said oil to the defendants, hereby investing the plaintiff with the title to said seven-eighths interest and hereby validating said deed of conveyance to and investing the defendants, Geo. B. Williams, Clayton Strode, Mrs. Dora Curry & Geo. Owens with title to said one-eighth royalty interest."

From this judgment the plaintiffs appeal. There is no cross-appeal or complaint of the judgment by the defendants. The only question upon the appeal, therefore, is whether the court should have set aside the whole deed. The facts are these:

Elzie Estep and his wife have eight children. He cannot read or write; she can write her name but she cannot write anything else or read writing for any practical purposes. They were in very poor circumstances. One of their daughters was sick and had to go to a hospital for an operation. They had to raise $200.00 to pay the expenses. They borrowed this and in order to meet the note agreed to sell G. W. Owens their royalty under the lease for $200.00. When the deed was produced to them neither one of them could read it. It was read to them by the agent of the grantors and as read to them did not contain the words above quoted. They testify that it was read to them as a deed to G. W. Owens for $200.00. They also introduced the officer who took the acknowledgment to the deed. He testifies that he read the deed; that the paper was written on an ordinary deed blank; that the consideration was $300.00 and it was simply for one-eighth royalty in the oil and gas; that the words above

quoted were not then in the deed. This is the sum of the evidence for the plaintiffs. On the other hand, the proof for the defendants is to the effect that the deed as originally drawn read just as it does now.

There is absolutely nothing in the record connecting the grantees in the deed with the alteration in it. The fact is that they lived in another county and are not shown to have seen the deed after its execution until after it was recorded, and when recorded it read just as it does now. Under the earlier English decisions the rule was that the alteration of a deed in a material part, even by a stranger, without right, avoided the deed. But this is not the rule now. In 1 R. C. L., p. 984, the modern rule is stated in these words:

> "Though a few early cases followed the English doctrine, yet the American rule, and with much the better reason, appears to be entirely the other way, and it would seem now to be completely settled in this country that a material alteration by a stranger without the privity of any of the parties thereto will not render an instrument void, if it can be shown by evidence, what the language was as it originally stood."

It does not appear who made the alteration, but if it could be presumed that the agent, whom the grantees sent to take the deed, made the alteration after it was signed and before it was recorded, this would not affect the grantees unless done by their authority.

> "Nor will an agent be presumed to have authority to make a change in an instrument from the mere fact that he is authorized to receive the instrument, or to deliver it to another." 1 R. C. L., p. 985.

Conceding the words above quoted were properly stricken out of the deed, the circuit court did not err in refusing to adjudge the whole instrument void, for it was clearly shown by the evidence what the language was as it originally stood, and upon all the facts the court concludes that these words and the amount of the consideration were really the only alteration made in the deed after it was signed.

Judgment affirmed.