## Roberts v. Rider.

(Decided June 22, 1934.)

C. C. WILLIAMS and J. W. BLUE, Jr., for appellant.

R. B. BIRD and L. L. WALKER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On or about June 2, 1929, Mrs. Lou Pennington delivered to Mrs. Maude Roberts a check payable to the latter in the name of Mrs. George Roberts signed or purported to have been signed by Mrs. Mollie Rider. The check reads:

"Bank of Mount Vernon.

"Mount Vernon, Ky. June 2, 1928.

"Pay to the order of Mrs. George Roberts $3,000.00 Three thousand dollars.

"Mollie Rider."

The check, except the signature, had been made out by Mrs. Pennington. Mrs. Roberts deposited the check to her account in a bank at Marion, Ky., but when it was forwarded to the bank of Mt. Vernon payment was refused, and the check was returned to the bank at

Marion. In the meantime, Mrs. Roberts had checked on the bank at Marion to the extent of the account, and, when the check was returned she was required to and did reimburse the bank. Thereafter Mrs. Roberts instituted this action against Mrs. Rider in the Rockcastle circuit court seeking to recover the amount of the check.

At the close of the evidence, the court sustained a motion for a directed verdict in favor of the defendant, and, from the judgment entered in conformity with such verdict, plaintiff is appealing.

In her original petition appellant alleged that appellee executed and delivered the check to her for value, it, when presented for payment, payment was refused because appellee had not sufficient funds in the bank to pay same. By answer appellee controverted the allegations of the petition.

By a pleading styled "reply and plea of estoppel" and by way of a second amended answer, appellant alleged, in substance, that appellee signed her name to the check and gave it to Mrs. Pennington with authority to fill it out for whatever amount she might desire or see proper, constituting Mrs. Pennington her agent with authority to fill out the check as it was later filled out; that appellee had been in the habit and it was her custom to deliver checks in blank or checks signed by her to Mrs. Pennington and to authorize the latter to fill out such checks for whatever amount she might desire; that the check sued on was delivered to appellant for value after it was completed and appellant had no knowledge, information, or belief that Mrs. Pennington had or was exceeding her authority in making out the check for the amount contained therein, if in fact there was any such limitation placed upon Mrs. Pennington. She further alleged that, at the time the check was drawn or filled out, Mrs. Rider and Mrs. Pennington were engaged in the business of purchasing agents as partners, and it was the custom of appellee to deliver checks in blank to Mrs. Pennington with authority and directions to fill out the checks for such amounts as she might wish or desire; that, after payment was refused by the bank, she demanded payment thereof from Mrs. Rider and the latter on several occasions agreed and promised to pay same, but has failed and refused to pay the check or any part thereof. Appellee entered a general denial to all the material allegations of appellant's pleading.

The facts as disclosed by the evidence are, in substance, that Mrs. Pennington has established an extensive business as purchasing agent, doing shopping for others in the city of Louisville. Mrs. Rider often assisted her in shopping and purchasing articles of merchandise. It also appears that Mrs. Rider had loaned or advanced to Mrs. Pennington at various times sums aggregating something over $80,000 or at least Mrs. Pennington had paid to Mrs. Rider sums aggregating over the amount indicated. The evidence further indicates that Mrs. Rider was receiving a good rate of interest on sums thus furnished. Appellant and Mrs. Pennington at times occupied the same apartment. Mrs. Roberts also advanced funds to Mrs. Pennington, but the amount so advanced by her was negligible when compared with the sums advanced by appellee. She was often in the apartment with appellee and Mrs. Pennington and seemed to have been acquainted with the latter's system of conducting her business. Appellant testified that appellee admitted to her that she had given Mrs. Pennington several checks signed in blank. When shown the check in controversy and asked whether it was signed by her, Mrs. Rider would not say positively that it was her signature, but stated that it looked like her signature. Appellant testified that it was Mrs. Rider's signature; however, counsel for appellee makes no question as to the genuineness of the signature.

According to the evidence of appellee, she seldom, if ever, filled out a check, but did sign checks after they were filled out or would sign them in blank and permit others to fill them out. When asked concerning the number of checks which she had signed and delivered to Mrs. Pennington before they were filled out, her answers were more or less vague and indefinite, since she used the word "several," etc. However, she did finally say that she had given her three such checks in the latter part of June, but was positive she had given no such check in the first part of June because she went to Tennessee the latter part of May and did not return until many days after the check in controversy was given. In this she was corroborated by her sister. She testified that when she gave these three checks to Mrs. Pennington she instructed her not to fill them out for more than $1,000 or $1,200 in the aggregate since she did not have more than the sum indicated to her credit in the bank. Mrs. Rider accounts for two of these checks given, but

her evidence indicates that the third check was not returned to her. Appellant testified that Mrs. Pennington had given her a check for $3,000 but took that check up when she delivered to her the check in controversy; that she had no notice or knowledge of any limitation placed upon Mrs. Pennington as to the amount that might be inserted in the check.

Counsel for appellee are maintaining that the court properly instructed the jury to render a verdict for appellee because appellant failed to sustain the allegations of the original petition that appellee executed and delivered the check to her, but this argument overlooks the allegations in the subsequent pleadings.

Unquestionably appellee signed the check in controversy. If appellee signed the check and placed it in the hands of Mrs. Pennington with authority, expressed or implied, to fill it out to whom and for whatever amount Mrs. Pennington might desire, and she did fill out the check and deliver it to appellant, there is no merit in this contention made by counsel, since Mrs. Pennington in such circumstances would be the agent of appellee, and this would be true even though the check had been delivered under instructions from appellee that it was to be filled out for a lesser amount, if appellant had no notice or knowledge of such instructions. Thomson v. Peck, 217 Ky. 766, 290 S. W. 722. If in any of the circumstances alleged by appellant appellee signed and delivered to Mrs. Pennington a check which had not been filled out or if she suffered or permitted her to have possession of such check, she and not an innocent party should bear any loss occasioned by such a course of conduct. It is a prevailing rule in all jurisdictions that, where one of two innocent persons must bear a loss, it should be borne by the one whose acts and conduct make it possible. Citizens' Union National Bank v. Terrell et al., 244 Ky. 16, 50 S. W. (2d) 60.

Clearly the evidence and natural and reasonable inferences to be drawn therefrom to sustain the allegations of appellant's pleading made an issue to be submitted to a jury under proper instruction. It therefore follows that the court erred in directing a verdict for appellee.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.