### Ridener v. Commonwealth.

(Decided Oct. 30, 1934.)

ALFRED P. LEWIS and LESLIE T. APPLEGATE for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Charged by an indictment in the Grant circuit court with the crime of uttering a forged instrument, E. M. Ridener was convicted and sentenced two years in the state reformatory. The crime is charged to have been committed by his erasing Harry Pelley's name and writing in its place in a deed the name "James J. Carroll," and the presenting the same in the office of the county clerk of Grant county to a deputy clerk and causing the same to be recorded.

On the 2d day of May, 1933, Ridener completed a trade with William C. Orr for the purchase of a tract of land in Grant county. They agreed for W. C. Smith to write the deed in accordance with the trade. For this purpose they went to the Mt. Zion Deposit Bank of which Smith was cashier; Smith and Ridener went into a rear room for Smith to write the deed, leaving Orr and wife in an adjoining room, where they remained during the writing of the deed. Ridener made known to Smith the names of the grantees, giving him at the time the names of Harry Pelley and Sarah Ridener, the wife of E. M. Ridener. Smith claims he, in the presence of Ridener, prepared the deed from Orr and wife to Pelley and Mrs. Ridener; and, on the completion of the writing of it, he returned with it to the room occupied by Orr and wife, and read it to them. Orr and wife and Ridener claim that Ridener read it to the Orrs and not Smith; the Orrs asserting that, in reading it to them, Ridener omitted the names of the grantees. The Orrs claim they never heard of the name "Pelley" during the negotiations of the trade or the writing and delivery of the deed. Mrs. Orr testified that they sold the land

"to Mr. Gruell and Mrs. Ridener." The deputy clerk claims that at the time the deed was presented by Ridener for recording it showed an erasure beneath the name of James J. Carroll, in both the body of the deed and the officer's certificate.

The defense of Ridener is a denial that the deed ever contained the name of Harry Pelley, either in the body or the certificate of acknowledgment, and that, if there was an erasure in either the deed or the certificate, where the name "James J. Carroll" was written, at the time he presented it for recording, he had no knowledge of when, or how, it occurred, or by whom it was done. He is positive that, at the time he gave Smith directions for the writing of the deed, he gave him the names of James J. Carroll and Sarah Ridener as the vendors to be written in the deed.

For the commonwealth, Russell Victor testified that Ridener came to his office during the summer of 1933 and sought him to write a deed from Carroll and Mrs. Ridener to a man named Dues. Victor began writing it, and, when near its completon, Ridener presented him with an old deed in which was the name "Harry Pelley." Ridener asked Victor to erase from the deed the name "Harry Pelley," "and put the name of James J. Carroll in place of it throughout the deed." Victor refused, and inquired of Ridener if the deed he was writing contained the same, or part of the same, land as that in the deed in which the name of Harry Pelley was written. On being informed it was, Victor removed from his typewriter the deed which he had begun to write, handed it to Ridener and informed him he would have nothing more to do with it. Victor testified that he, at that time, saw the deed and it was from Orr and wife, and conveyed the land "to Sarah Ridener and Pelley." On Victor's refusal to participate in the transaction, Ridener "walked across to the other side of the office to a table, sat down with the deed and erased the name of Pelley." Victor stated that C. L. Ransom came to his office with Ridener and was present at the time this occurred.

Ridener testifies that the transaction narrated by Victor did not occur. His testimony is corroborated by Ransom, who was present at the time of its alleged occurrence.

This synopsis of the evidence shows that it was conflicting, though sufficient to authorize the submission of the case to the jury and to sustain its verdict.

Ridener is here insisting, "if this deed was originally made, as claimed by the commonwealth, as long as the defendant had it in his possession, he could make any change in it, so long as he did not violate any right adverse of the grantors."

After the deed was signed and acknowledged by the grantors and delivered to him, thereafter the authority of Ridener was only to carry the deed and deliver it to the grantees. He was without either expressed or implied authority to alter it, materially or otherwise. It was a completed instrument at the time he received it, and, being a mere agent to transport and deliver it to the grantees, his sole authority was to deliver it to them as it was written at the time he received it. Blakey v. Johnson, 13 Bush, 197, 26 Am. Rep. 254.

The testimony of Russell Victor was objected to by Ridener at the time of its admission. The ground of objection, then and now, is, Victor was, at that time, employed by Ridener as an attorney; therefore his testimony was and is within subsection 4, sec. 606, Civil Code of Practice. True, it is, this provision of the Code applies in criminal prosecutions as well as civil cases, and it prohibits an attorney testifying concerning his client's communcations to him, or his advice thereon, without the latter's consent. It is absolute as to communication by, or to, a person advising with an attorney as to past transactions and offenses; but it does not apply to present or future transactions when the client is seeking advice in contemplation of the perpetration of fraud or the commission of a crime. Cummings v. Com., 221 Ky. 301, 298 S. W. 943. It is plain that Ridener, in attempting to employ Victor as counsel, or soliciting him to erase the name of Harry Pelley, and inserting in its place that of James J. Carroll, was engaging Victor to do an unlawful act—the deprivation of Pelley of his rights as grantee in the Orr deed and the vesting the same in Carroll, without the former's authority or consent. And when he sat down, made the erasures, and inserted the name of Carroll in the body of deed and in the certificate of acknowledgment, as narrated by Victor, he deprived himself of the protection

of the secrecy imposed on Victor by the Civil Code of Practice.

The testimony of Victor was sufficient to show that Ridener sought his advice for an unlawful end, and the act in which Ridener engaged was the accomplishment of a material alteration of the deed, an unlawful act, unless it was done with the expressed or implied authority of Harry Pelley. The court did not err in admitting Victor's testimony.

The indictment charges the crime named in it was committed by Ridener, as therein set out, "without the knowledge or consent of 'Harry Pelley.'" Instruction No. 1 follows the language of the indictment, except it omits to require the jury to believe from the evidence beyond a reasonable doubt that the acts therein described, if committed by Ridener, were done "without the authority or consent of Harry Pelley."

Blackstone defines forgery to be: "The fraudulent making or alteration of a writing to the prejudice of another man's rights." 1 Bishop on Crimanl Law, sec. 572, says it is: "The false making or materially altering, with intent to defraud, of any writing, which if genuine, might apparently be of legal efficacy or the foundation of legal liability." The essential ingredients of the crime are: "A false making of some instrument; a fraudulent intent; an instrument in such form as to be apparently of some legal efficacy." Robertson's Criminal Law & Procedure (2d Ed.) sec. 776, p. 969.

It must be observed that one of the essential elements of the crime is the false making or materially altering the instrument, with the intent to defraud, and where, as in this case, the act charged to have been done by the accused was the erasing from the deed the name of Harry Pelley, it was indispensably essential in order to sustain a conviction to allege in the indictment and to prove by competent evidence that the name of Harry Pelley was erased from the deed without his authority or consent; otherwise the element of fraudulent intent was totally absent and the crime of forgery was not committed. The commonwealth was under the duty, not only to allege in the indictment that the name of Harry Pelley was erased from the deed and the certificate thereto, without his authority or consent, but to establish by the evidence to the exclusion of reasonable doubt

that the erasures were without his authority or consent, and the name of James J. Carroll written therein, and thereafter the deed was knowingly and falsely uttered by Ridener. Moore v. Commonwealth, 92 Ky. 630, 18 S. W. 833, 13 Ky. Law Rep. 738.

The instruction of the court erroneously omitted to require the jury to believe from the evidence beyond a reasonable doubt that the name of Harry Pelley was erased from the deed and the certificate and Carroll's name written in its place, without the former's authority or consent.

It is true that Pelley testified that the erasures were without his authority or consent, but the instruction failed to require the jury so to believe beyond a reasonable doubt, entitling the accused to a reversal, for this error in the instruction.

Wherefore the judgment is reversed, with directions to award Ridener a new trial and for proceedings consistent with this opinion.