**In re STANLEY B. YOUNG & CO.**

No. 11312.

District Court, W. D. Kentucky, Louisville.

Feb. 28, 1941.

Frank Ginocchio, of Lexington, Ky., for petitioner Mamie McCann.

Grafton & Grafton, of Louisville, Ky., for respondent Granberry & Co.

SWINFORD, District Judge.

This case is before me on a petition to review an order of the referee entered on May 9, 1940.

The petitioner complains of two errors which are set forth in her petition and read as follows:

"(1) The Referee erred in failing and refusing to adjudge your petitioner's claim a good and valid one and in not allowing same, and in failing and refusing to adjudge same a prior and superior one to all of those claimants against the bankrupt estate who gave their consent to the said Stanley B. Young & Company to rehypothecate their securities in the hands of the said Stanley B. Young & Company.

"(2) That the Referee erred in said order entered May 9, 1940, in holding and deciding that the subagents, Granberry & Company, had a right to handle and dispose of your petitioner's unindorsed certificate of Texas Gulf Producing Company stock, accompanied by her power of attorney on separate paper, without inquiry as to their right so to do, as agents of this petitioner's agent, Stanley B. Young & Company, and in reduction of the individual indebtedness of Stanley B. Young & Company to said Granberry & Company."

Prior to April 15, 1935, the petitioner was the owner of 100 shares of stock in the

Texas Gulf Producing Company. The bankrupt, a brokerage firm, was employed to purchase for the petitioner twenty five shares of General Electric Stock. Simultaneously, for the purpose of securing her brokerage account, the petitioner delivered to the bankrupt her certificate for the 100 shares of Texas Gulf Producing Company stock, accompanied by a power of attorney in blank to transfer the stock. The petitioner had an oral arrangement with the bankrupt that this stock should not be sold or transferred without her prior consent. The bankrupt never executed the order to purchase the General Electric stock for the petitioner. The bankrupt was not a member of the New York Stock Exchange, but dealt in stocks through another brokerage firm, Granberry & Company, with which it had a running account.

On May 2, 1935, the bankrupt transmitted to Granberry & Company, along with other stocks the petitioner's certificate for the 100 shares with which was attached the separate power of attorney.

The stocks were sold and the account of the bankrupt with Granberry & Company was credited with the proceeds. It is strongly urged that Granberry & Company should account to the petitioner for the proceeds from the sale of the stock on the ground that Granberry & Company, with knowledge that the bankrupt was acting in an agency capacity was bound by the oral agreement that the stock should not be sold by the bankrupt without the prior consent of petitioner. That with notice of the agency it was bound to make inquiry of the extent of the agency or act at its risk.

It is urged that the stock certificate was not a negotiable instrument and could not be treated as such.

It is my judgment that the question for determination is relatively simple.

The loss incurred by the petitioner was occasioned by placing her confidence in a faithless broker who apparently, from the record, deliberately violated instructions, converted the 100 shares of the Texas Gulf Producing Company stock to itself and failed to account to her for the proceeds. The petitioner and Granberry & Company were both deceived by the bankrupt. The deception was made possible by the petitioner executing the power of attorney.

■ Where one of two innocent parties must suffer loss equity fixes that loss upon the one whose actions brought it about.

Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S.W.2d 60; Roberts v. Rider, 255 Ky. 266, 73 S.W.2d 17.

■■ I cannot agree that Granberry & Company was under an obligation to inquire into the extent of the agency between the petitioner and the bankrupt even though it knew, which it undoubtedly did, that the bankrupt was acting as agent for the petitioner. It is true that the stock certificate was not negotiable within the meaning of the law merchant's definition of a negotiable instrument yet I think it is equally clear that it does not have the status of ordinary common law paper, within the meaning of that definition.

■ A person dealing with a stock brokerage firm is charged with knowledge of the practical workings of what we call "trading in stocks" or buying and selling on an exchange. Hundreds of transactions are had hourly. To endorse in blank a stock certificate or accompany it with a power of attorney executed in blank and hand it to a brokerage firm with instructions to use it as collateral to secure the customer's account is, of course, a very legitimate and, so far as I know, not unusual procedure.

■ Between the principal and the agent (broker) there must be a strict accounting but, with no warning of latent equities, when the certificate gets into the hands of a corresponding broker or agent of the agent such stock certificate must of necessity be treated as negotiable and placed, for all practical purposes, on the same plane as a negotiable instrument. That is, as "a traveler without luggage whose countenance is his passport."

■ In 18 C.J.S., Corporations, § 397, p. 938, we find the following text: "Where an owner of stock enters into a transaction by which he transfers his stock to another, he may be estopped to question the fact of the transfer or the title of the transferee who acquires the stock in good faith, * * *."

■ It is both inequitable and unreasonable to hold transactions in the routine of a brokerage business in dealing with stock certificates, carrying apparent authority to transfer on their face, to the same strict accountability of an isolated transaction. The law has long recognized this rule and it has been repeatedly expressed. 18 C.J.S., Corporations, § 390, p. 919; First Nat. Bank v. Lanier, 11 Wall.

369, 20 L.Ed. 172; Knox v. Eden Musee Americain Co., 148 N.Y. 441, 42 N.E. 988, 31 L.R.A. 779, 51 Am.St.Rep. 700; Will's Adm'r v. George Wiedemann Brewing Co., 171 Ky. 681, 188 S.W. 778, Ann.Cas.1918E, 62.

The Supreme Court of the United States in the case of First National Bank v. Lanier, supra [11 Wall. 377, 20 L.Ed. 172], said: "It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations, and the assumption is a safe one, it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates."

The Kentucky Court of Appeals has expressed itself similarly in Will's Adm'r v. George Wiedemann Brewing Co., supra [171 Ky. 681, 188 S.W. 780, Ann.Cas.1918 E. 62], wherein the court said: "Although neither in form nor character is a stock certificate negotiable paper, it nearly approximates it where, as in the case of the lost certificates here involved, they are indorsed in blank by the owner, with power of attorney to transfer them to anyone who may obtain possession of them as holder, for such indorsement is a notification to all persons interested to know that whoever in good faith buys the stock and produces it to the corporation regularly assigned with power to transfer will be entitled to have the stock transferred

to him. Indeed, it goes farther, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates."

The petition should be dismissed.

Proper orders may be submitted.