## Lincoln Building & Loan Ass'n v. Cohen et al.

Nov. 4, 1942.

Lawrence F. Speckman for appellant.

Woodward, Dawson & Hobson and Grover G. Sales for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Lincoln Building & Loan Association brought an action in the Jefferson circuit court on August 15, 1940, against Irving S. Cohen to foreclose a mortgage on a house and lot executed by Cohen December 21, 1939, to secure the payment of a loan of $2,000 made to him. Rose Gardner Woodward and Elise Gardner Snyder,

the actual owners of the property who were residents of Chicago, Illinois, and Dayton, Indiana, respectively, learned of the foreclosure proceeding and, after an investigation, discovered a fraud had been perpetrated upon them by their attorney, Roy A. Frankenberger, who had delivered to Cohen a forged deed which purported to convey to Cohen the house and lot owned by Mrs. Woodward and Mrs. Snyder. On September 5, 1940, they brought an action against the Lincoln Building & Loan Association and Irving S. Cohen to have the deed declared void and to cancel the mortgage from Cohen to the Building & Loan Association. The two actions were consolidated, and an agreed stipulation of facts was filed. Judgment was rendered canceling both the deed and the mortgage, and the Building & Loan Association's petition against Cohen was dismissed. The Lincoln Building & Loan Association has appealed, and insists that Mrs. Woodward and Mrs. Snyder should have been charged, at least, with the amount received by them out of the proceeds of the loan and that a personal judgment for the balance should have been rendered against Cohen. The admitted facts are these:

Mrs. Emma C. Gardner died testate a resident of Louisville, Kentucky, on December 7, 1938. In her will she devised her property, including her residence in Louisville, Kentucky, to her two daughters, Rose Gardner Woodward and Elise Gardner Snyder, and appointed them her executrices. The will was probated by the Jefferson county court on February 10, 1939, and Mrs. Woodward qualified as executrix and acted as such until June 10, 1939, when Roy A. Frankenberger, her attorney, persuaded her to resign because she was a nonresident and to permit him to quality as administrator de bonis non with the will annexed. Frankenberger notified Mrs. Woodward and Mrs. Snyder that he would be unable to make a settlement or to distribute any funds belonging to the estate until the expiration of nine months from the date of his appointment and qualification. Mrs. Snyder was in need of funds and, with the consent of her sister, authorized Frankenberger to negotiate a loan on the real estate in the sum of $500. He reported that he had arranged with the Commonwealth Life Insurance Company of Louisville for a loan of $600, to be secured by a mortgage on the property. The Commonwealth Life Insurance Company stipulated that $100 should be held

out of the proceeds to paint the house in the spring. Frankenberger prepared a mortgage which was signed and acknowledged by Mrs. Woodward and her husband at Chicago, Illinois, and by them forwarded to Mrs. Snyder at Dayton, Indiana, where it was signed and acknowledged by her and her husband. The mortgage was returned to Frankenberger. The mortgage was typewritten on four pages of paper, the signatures of Mr. and Mrs. Woodward and Mr. and Mrs. Snyder and the certificates of the notaries being on the fourth page. Frankenberger removed the first three pages and substituted for them a typewritten page which conveyed the property to Irving S. Cohen, a friend and associate of Frankenberger. The deed was recorded in the office of the clerk of the Jefferson county court on December 18, 1939. Irving S. Cohen made application in writing with the Lincoln Building & Loan Association for a loan of $2,000 on the real estate described in the deed. In his application he stated that he had purchased the property for $4,250. The property was appraised, the title examined, the loan approved, and the mortgage was signed and acknowledged by Cohen on December 21, 1939. At the same time he executed his note to appellant for $2,000. The note provided that the principal and interest should be paid in monthly installments of $20 each, to be applied first to interest on the unpaid balance and the remainder to the principal. In the note Cohen also agreed to subscribe to certain shares of stock in the Association and to pay the sum of 50 cents a month on each share as dues. The stock was pledged as additional collateral security. The Association withheld $200 to cover cost of painting the property in the spring, $8.41 for state and county taxes, $25 for expenses of examination of title and recording mortgage, and $27.50 as the first payment on the loan. A check in the sum of $1,739.09, representing the net proceeds of the loan, was issued and delivered to Cohen who delivered it to Frankenberger unendorsed. Frankenberger cashed the check and sent to Mrs. Snyder his personal check for $482, which he represented to her was the net proceeds of the $600 mortgage she had executed to the Commonwealth Life Insurance Company after deduction of $100 for painting the house and expenses of the loan. The house was painted in the spring of 1940, and a receipted bill from the painter of $148 to the Lincoln Building & Loan Association was produced, and upon a written order purportedly

signed by Irving S. Cohen, the Association delivered to Frankenberger a check for $200 payable to Cohen. Cohen was a close friend of Frankenberger, and the latter asked him for permission to place the property in his name as an accommodation for one of Frankenberger's clients who wished to mortgage the property for $2,000, and Cohen consented that such an arrangement should be made. It was stipulated that Frankenberger forged his endorsement on the two checks, and that he received no consideration out of the transaction. Frankenberger paid to the Lincoln Building & Loan Association, in Cohen's name, the monthly installments for two or three months. The note had a precipitation clause, and on July 12, 1940, the payments being in arrears, Cohen was notified in writing of his failure to pay the note according to its terms. Cohen did nothing, and on August 15, 1940, the Association brought suit to foreclose the mortgage.

The judgment to the extent that it canceled the deed and mortgage is correct. A forged deed is void, and, of course, a mortgage is of no higher dignity than the deed on which it is based. "It is well-established that an instrument may be so altered that it is not the instrument signed by the maker, and if this is fraudulently and falsely done, it is forgery." 23 Am. Jur., Forgery, Section 16. Forgery is the false making or material alteration with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. 2, Bishop Criminal Law, 7th Edition, section 523. In Lowther Oil & Gas Company v. McGuire, 189 Ky. 681, 225 S. W. 718, the name of the grantee in a deed was erased after the deed had been executed, and the name of another was inserted therein. The deed was then recorded and, without notice of the fraud, Lowther and others took an oil and gas lease from the grantee named in the recorded deed. Before the altered deed was recorded, the interest of the real owner, the grantee named in the original deed, was levied on and sold under execution to McGuire. In an action between McGuire and the lessees named in the altered deed, it was held that a fraudulent material alteration of a deed is in law a forgery, and that the purchasers from the vendee in a forged deed obtained no better title than that possessed by the vendor and are not entitled to the protection afforded to innocent purchasers. In the in-

stant case Mrs. Woodward and Mrs. Snyder never meant to execute a deed to Irving S. Cohen. They actually executed a mortgage to the Commonwealth Life Insurance Company. The instrument recorded by Cohen was in law a forgery. It is argued by appellant, however, that Frankenberger was the agent and attorney of the appellees Mrs. Woodward and Mrs. Snyder, and that his acts while acting as agent bound his principals and made them liable to appellant for the entire amount advanced by it on the real estate. Frankenberger was the agent of appellees to negotiate a loan to be secured by a mortgage on the real estate, and after the mortgage had been executed to deliver it to the mortgagee. He had no authority, express or implied, to alter the mortgage and, certainly, no authority to convert it into a deed. Under the circumstances the alteration of the instrument by Frankenberger is to be regarded as the act of a stranger. Blakely v. Johnson, 13 Bush 197, 26 Am. Rep. 254, 255; Estep v. Owens, 209 Ky. 603, 273 S. W. 455; Ridener v. Commonwealth, 256 Ky. 112, 75 S. W. (2d) 737.

The court erred, however, in refusing to grant appellant any relief. Mrs. Woodward and Mrs. Snyder received the following benefits from the proceeds of the loan negotiated by Frankenberger and Cohen: Cash to Mrs. Snyder, $482.50; cost of examining title and recording mortgage, $25; state and county taxes, 1939, $8.41; city taxes, 1940, paid by appellant, $72.05; painting house, $148; making a total of $735.96. Under the judgment, the appellees Mrs. Woodward and Mrs. Snyder have their property free from lien and in addition, have been given a profit on the transaction of $735.96. The entire loss has been placed upon appellant, an innocent party. These items were not specifically pleaded by appellant, but the action was in equity, and in its pleadings it asked for all equitable relief to which it was entitled. A judgment in its favor against Mrs. Woodward and Mrs. Snyder for $735.96 should have been rendered, and it should have been given a lien on the real estate to that extent.

The court also erred in dismissing the petition as to Irving S. Cohen. A personal judgment against him should have been rendered for the full amount of appellant's debt subject to a credit of $735.96, the amount received by Mrs. Woodward and Mrs. Snyder. It was stipulated that the two checks, aggregating $1,939.09, issued

to Cohen by the appellant were not endorsed by Cohen and that he did not receive any consideration. He held out Frankenberger as his agent and attorney, and when he delivered the $1,739.09 check to Frankenberger he knew that Frankenberger's purpose was to cash it. He impliedly authorized Frankenberger to do whatever was necessary to obtain the cash, including signing his name as endorser. He represented to the Association that he was the owner of the real estate and had purchased it at a price of $4,250, and, relying upon his representations and the execution by him of the note and mortgage, the Association paid out the sum of $2,000. Even if he was nothing more than an innocent tool of Frankenberger, it was his conduct that made the fraud possible. This is a proper place for application of the well-known rule in equity that as between two innocent persons he must suffer who, by his acts or laches, has made a loss possible. Roberts v. Rider, 255 Ky. 266, 73 S. W. (2d) 17; Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S. W. (2d) 60; Anglo American Mill Co. v. Kentucky Bank & Trust Company, 243 Ky. 124, 47 S. W. (2d) 951.

The judgment is reversed with directions to enter a judgment in accordance herewith.