**AMERICAN NATIONAL BANK AND TRUST COMPANY OF BOWLING GREEN, KENTUCKY, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

**No. 1384.**

United States District Court,
W. D. Kentucky,
Bowling Green Division.

June 11, 1970.

---

**1280**

Milliken & Milliken, by G. D. Milliken, Jr., Bowling Green, Ky., for plaintiff.

Bell, Orr & Reynolds, by Jerry L. Moore, Bowling Green, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

This case, having been properly removed to the United States District Court for the Western District of Kentucky in accordance with 28 U.S.C. section 1441(a), is before the court on motions by the plaintiff and defendant for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure.

A brief résumé of the facts from which this litigation arises is as follows. Occasionally banks suffer a shortage of currency and are unable to meet their practical needs. When such a deficit occurs it is apparently the custom of banks in Bowling Green, Kentucky, as well as others throughout the country, to call upon neighboring banks within their community and arrange an exchange of the necessary currency for a cashier's check of an equal sum. On March 27, 1969, a person, whose identity is unknown, telephoned the plaintiff, the American National Bank and Trust Company of Bowling Green, and asked to speak to Mrs. Obie Bates, the chief teller. The caller representing himself to be a spokesman for the Citizens National Bank of Bowling Green, told Mrs. Bates that the armored car service had failed to leave a sufficient amount of currency on its last delivery and that the Citizens Bank was in need of $20,000 in denominations of tens and twenties. The caller further said that a part time employee would deliver a cashier's check for $20,000 as soon as possible if the American National Bank could spare that amount of currency. Mrs. Bates, who normally handled such transactions, agreed to accommodate the unidentified caller and assured him the check would be cashed. A young man, purporting to be a courier from the Citizens National Bank, arrived shortly thereafter, contacted Mrs. Bates, tendered the check, and walked out with $20,000. The following day when the cashier's check was presented in due course to the Citizens National Bank by the plaintiff it was discovered that it was only valid to the extent of $20.00. The plaintiff, having been hoodwinked, initiated this action against its insurer and defendant, Hartfort Accident and Indemnity Company, to recover $19,980 on its Bankers Blanket Bond which indemnified the plaintiff against certain specified losses.

Among the compensable losses were those which occurred by robbery, burglary, common law or statutory larceny, theft or false pretenses. Explicitly excluded from coverage by the policy were those losses effectuated by forgery. The plaintiff contends that the loss which occurred on March 27, 1969, was precipitated by false pretenses or larceny, while the defendant pleads that it was the result of forgery and consequently not compensable under the terms of the indemnity bond.

There appears from the pleadings, affidavits, admissions and deposition within the record before the court to be no genuine issue as to any of the material facts. The case is therefore, properly a matter for summary judgment according to part (c) of rule 56 of the Federal Rules of Civil Procedure.

There is no dispute that the Bankers Blanket Bond issued to the plaintiff does not cover losses attributable to forgery. The policy states at section 1 of the provisions relating to conditions and limitations that: "This Bond does not cover (a) any loss effected directly or indirectly by means of forgery * * *." What this court must decide is whether the purloined money was obtained through false pretenses as defined by statutory law, or whether it was released solely on the authority of the altered cahier's check.

The question of larceny is not pertinent. When the currency was transferred neither the plaintiff nor its agent, Mrs. Bates, had any intention of retaining a right of property over it; possession as well as all claim of right in the money were voluntarily given up.

■■■■ Kentucky Revised Statute 434.050 codifies the felony of false pretenses and section 434.130 defines the crime of forgery. The statutory language within these sections sheds little light on the immediate problem, for it is apparent that deceit is at the core of both offenses. In fact, in the case of Taylor v. Commonwealth, 384 S.W.2d 333 (1964) the Kentucky Court of Appeals noted that the same act could constitute either false pretenses or forgery. The elements of false pretenses, as it is understood in Kentucky, were set out in Rand v. Commonwealth, 176 Ky. 343, 195 S.W. 802 (1917) and are: (1) a false pretense; (2) the false pretense must be made by the defendant or someone in his behalf or at his behest; (3) the defendant must have had knowledge of the falsity of the statement; (4) the person defrauded must have relied upon the statement; (5) the property must have been obtained by the defendant or someone in his behalf; (6) the defendant must have had intent to defraud; and (7) actual defrauding must have occurred. Clearly all of these elements are a part of the crime of forgery, however forgery is refined in that it relates exclusively to a written instrument whereas false pretenses pertains to deceit by parol. At the risk of being superfluous it may be said that a man guilty of false pretenses could be innocent of forgery, but a man guilty of forgery could not be innocent of false pretenses. Despite the banality of this paradigm it does perhaps strike at the heart of the matter for the loss sustained by the plaintiff was effectuated by a combination of oral deceit and an altered instrument. The culprit as suggested in Taylor v. Commonwealth, could be indicted under either statute.

The ease with which the fraudulent scheme was perpetrated and the utter simplicity of the entire operation seem ludicrous, but it is not unforeseeable that such a loss might occur. Mrs. Bates stated in her deposition taken on December 16, 1969, that the cashier's check never would have been accepted had no call preceding its delivery been placed. She aptly noted that had the call not been made she would not have known whether the bank had an available reserve of currency to meet the request. This type of transaction apparently occurred regularly, if not frequently, and the standard procedure was to let the bank having the available currency know in advance how much was needed

and at what time the courier from the borrowing bank would arrive. The criminal who plotted this scheme had to have a knowledge of banking and banking transactions. It was not, although perhaps misleadingly facile, a one step procedure consisting of merely presenting an altered cashier's check for negotiation.

The Bankers Bond expressly states that any loss resulting from false pretenses will be compensated. The crime could not have been committed had not certain false pretenses, unrelated to the cashier's check, been made and relied upon. The success of the venture depended upon the efficacy of the oral inducements. It is this court's opinion the loss is compensable under the terms of the policy. An order in conformity with this memorandum is this day entered.