**AMERICAN NATIONAL BANK AND TRUST COMPANY OF BOWLING GREEN, KENTUCKY, Plaintiff-Appellee,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant-Appellant.**

No. 20709.

United States Court of Appeals,
Sixth Circuit.

May 26, 1971.

---

William R. Harris, Bowling Green, Ky., for appellant; Jerry L. Moore, Bowling Green, Ky., on brief.

G. D. Milliken, Jr., Bowling Green, Ky., for appellee; Milliken & Milliken, Bowling Green, Ky., on brief.

Before EDWARDS, CELEBREZZE and BROOKS, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the United States District Court for the Western District of Kentucky involving a dispute over the insurance coverage of a Banker's Blanket Bond. The District Court, 313 F.Supp. 1279, granted summary judgment in favor of the American National Bank and Trust Company of Bowling Green, Kentucky, [hereinafter

referred to as the "Insured"] and against the Hartford Accident and Indemnity Company [hereinafter referred to as the "Insurer"]. Hartford Accident, the Insurer, appeals the order granting summary judgment in favor of the American National Bank, the Insured.

The underlying facts which gave rise to the Insured's loss are undisputed. On March 27, 1969, an unidentified person telephoned the Insured and told them that the nearby Citizens National Bank required $20,000.00 of currency to meet their banking needs. The unidentified caller was familiar with the manner in which banks in the Bowling Green area arranged for inter-bank transfers of funds. He knew that it was essential to speak with the Insured's head teller, to identify the denominations of currency required and to use a cashier's check to effectuate the transfer.

A few minutes after the telephone call, a person appeared at the Insured with a cashier's check drawn upon Citizens National Bank and which appeared on its face to be valid for $20,000.00. The Insured's head teller testified that she examined the check, "looked at * * * the body of the check and the figures" and satisfied herself that "it was legitimate." Only after such examination and receiving "the check in hand" did the head teller pay out $20,000.00 to the man who purported to be a courier from the Citizens National Bank.

Subsequently, the Insured discovered that its teller had been deceived by the unidentified caller and courier. The cashier's check upon which the Insured had relied in paying out $20,000.00 had been altered from its originally issued amount of $20.00. The altered cashier's check was honored by its issuing bank for its original $20.00 value. Thereafter, the Insured sought recovery for its $19,980.00 loss from its Insurer with whom it carried a Banker's Blanket Bond.

The bond, in relevant part, "indemnifies and holds harmless the American National Bank" for "(B) Any loss of property through * * * false pretenses * * *" and " (D) Any loss through FORGERY OR ALTERATION of, on or in any checks * * *." Attached to the policy is a rider deleting Insuring Clause (D) covering forgery or alteration. Also, the "EXCLUSIONS" section of the policy states: "This Bond Does Not Cover * * * Any loss effected directly or indirectly by means of forgery, except when covered by Insuring Clause * * * (D)." In addition, the Insured admitted in writing that the Insurer "did on various occasions prior to the loss involved in this action, inform [the Insured] that [the Insurer] had available to sell to the [Insured] coverage which would have indemnified it for losses resulting from forgery or alteration, and did offer to extend such coverage to the [Insured] in consideration of a higher premium than was being paid for the Bond which is the subject of this action * * *."

Before discussing the specific issue of the scope of coverage of the instant Banker's Blanket Bond, it would be well to point out the areas of agreement and disagreement between the parties. Both the Insurer and the Insured agree with the District Court's finding that "[t]he crime could not have been committed [and the loss would not have occurred] had not certain false pretenses, unrelated to the cashier's check, been made and relied upon." The parties agree that one of the causes of the instant loss was the making of false pretenses by the unidentified caller and courier. KRS § 434.050 (1963). See Jackson v. Commonwealth, 445 S.W.2d 835 (Ky.1969); Rand v. Commonwealth, 176 Ky. 343, 195 S.W. 802 (1917). Had the contested insurance contract not contained a rider and an exclusionary section specifically deleting losses through forgery, there is no question between the parties that the clauses indemnifying the Insured against "Any losses through * * * false pretenses" would have covered the instant loss.

The sole question between the parties is whether the rider clause and exclusionary sections to the insurance contract which delete coverage for "forgery" losses act to bar coverage of "false pretense" losses where one of the direct or indirect causes of the "false pretense" losses was the material alteration of the amount payable on an otherwise valid cashier's check.

■ In determining whether the Insured's loss is compensable, we must apply the law of Kentucky because our federal jurisdiction is premised upon diversity of citizenship between the parties, 28 U.S.C. § 1332 (1964). Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Lones v. Detroit, Toledo and Ironton R. Co., 398 F.2d 914, 918 (6th Cir. 1968). Further, in that this case involves questions regarding the interpretation of and the recovery upon an insurance contract that was initiated, delivered and to be performed in the State of Kentucky, we must apply the law of the State of the Insured, Kentucky, rather than the law of the State of the Insurer. State Bank of Poplar Bluff v. Maryland Casualty Co., 289 F. 2d 544, 546–547 (8th Cir. 1961).

■ A review of Kentucky law clearly establishes that the material alteration with the intent to defraud of the amount payable of an otherwise valid cashier's check is "forgery". Lincoln Building & Loan Assn. v. Cohen, 292 Ky. 234, 165 S.W.2d 957 (1942); Louisa Nat'l. Bank v. Kentucky Nat'l. Bank, 239 Ky. 302, 39 S.W.2d 497 (1931), Shelton v. Commonwealth, 16 S.W.2d 498, 229 Ky. 60 (1929). With specific regard to the material alterations of bank drafts, money orders or checks, the Court of Appeals of Kentucky has stated:

"Forgery can be committed by the alteration of an instrument by erasure or addition, with intent to prejudice the right of another. It has been held that to alter the date of a promissory note or an order, to alter the words and figures of a bank bill, to alter the date of a deed so as to effect established rights, is forgery." Commonwealth v. Walls, 86 S.W. 684, 685 (Ct. of Appeals of Kentucky, 1905).

An examination of the record in the instant case reveals that the teller of the Insured accepted a cashier's check originally issued for $20.00 by Citizens National Bank but altered at the time of its uttering or passing to read in the amount of $20,000.00. Further, at the time of the passing of the check the record reveals that the head teller satisfied herself that the Citizens National Bank cashier's check "was for twenty thousand," "that the body of the check and the figures correspond," and that she would not have cashed the check until she "look[ed] at the check to make sure it was legitimate." On such undisputed facts, we may infer that the Insured would not have cashed the Citizens National Bank cashier's check for $20,-000.00 had it not been altered so that it appeared to be for $20,000.00 rather than the $20.00 amount for which it was issued.

Based upon such facts and upon the inference of an intent to defraud which arises from the making of false representations before and at the time of the passing of the cashier's check, we find that the loss of property suffered by the Insured on March 27, 1969, was effected, at least in part, by forgery as defined by Kentucky case law and statutes. KRS § 434.130 (1963), Building & Loan Assn. v. Cohen, 292 Ky. 234, 165 S.W.2d 957 (1942); Commonwealth v. Walls, 86 S.W. 684 (Ct. of Appeals of Kentucky, 1905).

Our finding with regard to the role of forgery in effecting the Insured's loss is not inconsistent with the parties' admissions that a concomitant cause of the loss was the making of false pretenses. Kentucky law defines "obtaining money under false pretenses" so broadly that nearly every act of forgery is accompanied by a violation of Kentucky's criminal laws relating to false pretenses. KRS §§ 434.050, 434.130 (1962), Taylor v. Commonwealth, 384 S.W.2d 333 (Ky.

1964); Day v. Commonwealth, 110 S.W. 417 (Ky.1908). See White v. Commonwealth, 196 Ky. 64, 244 S.W. 54 (1922). See also 35 C.J.S. False Pretenses § 3 (1960). The instant case is one in which under Kentucky law all of the elements of both forgery and obtaining money under false pretenses coalesce.

Although the facts may be interpreted to constitute a loss which was caused by both "forgery" and "obtaining money under false pretenses," Taylor v. Commonwealth, 384 S.W.2d 333, there are several instances under Kentucky law in which a bank may suffer a loss through "false pretenses" without "forgery" having been committed. 35 C.J.S. False Pretenses § 3 (1960). Thus, for example, where a bank accepts a depositor's checks and credits his account, but before those checks are dishonored by the drawee bank for insufficient funds, the depositor withdraws the amount of the checks from the depository bank, there has been a loss through false pretenses. 11 Couch on Insurance 2nd § 44:333-34 (1963). Also, where a man falsely represents himself to be the payee of a negotiable check and the drawee bank honors the check, the loss suffered would be as a result of a false impersonation or pretense. See KRS § 434.050, 434.130 (1963). We find, therefore, that under Kentucky law the Insured may have suffered a number of losses as the result of "false pretenses" which were not effected "directly or indirectly" by means of a "forgery" or material alteration of a bank draft or check.

■ The language of the instant contract indemnifies the Insured for "any losses through * * * false pretenses," but excludes by attached rider and by specific exclusionary language "any loss effected directly or indirectly by means of forgery." While—in general—we are to construe ambiguous language in an insurance contract favora-

bly to the insured, Independence Ins. Co. v. Jeffries', Adm'r., 294 Ky. 690, 172 S.W.2d 566 (1943), under Kentucky law unambiguous and clearly drafted exclusions which are "not unreasonable" are enforceable. General Exchange Ins. Corp. v. Kinney, 279 Ky. 76, 129 S.W.2d 1014, 1017 (1939). Independence Ins. Co. v. Jeffries', Adm'r., supra. Cf. United Pacific Insurance Co. v. Idaho First National Bank, 378 F.2d 62 (9th Cir. 1967).

There is no merit in the contention that the phrase "any losses through * * * false pretenses" is ambiguous because it may or may not include "losses through * * * forgery." Under Kentucky law, practically every forgery is effected by use of some false pretense, false personation of false representation. It would have been meaningless for the parties to have attached a rider excluding "losses through * * * forgery or alteration" if the phrase "any losses through * * * false pretenses" was intended to include forgery losses in any event. Moreover, the significantly lower premium charged for the Banker's Blanket Bond which covered losses through false pretenses and excluded losses through forgery raises a reasonable inference that the parties intended to contract for the sharply reduced coverage of the class of losses from false pretenses not directly or indirectly effected by means of forgery. See Washington Nat. Insurance Co. v. Burke, 258 S.W.2d 709, 710 (Ky. 1953).

■ We find that the language in the Banker's Blanket Bond unambiguously and precisely excluded the risk of any losses effected "directly or indirectly" by means of forgery. We further find, that such an exclusion of forgery losses was not unreasonable where the insured remained insured for that class of losses through false pretenses in which no forgery occurs.[1]

1. The two most common occasions when a loss through false pretenses would not be effected directly or indirectly by for-

gery are: first, where someone other than the payee-endorser of a valid negotiable check presents a check to the drawee

Applying the aforementioned legal principles and our accompanying findings, we conclude that the instant loss suffered by the Insured was "effected directly or indirectly"—as that phrase is defined under Kentucky law, John Hancock Mutual Life Insurance Co. v. Long, 285 Ky. 757, 149 S.W.2d 510, 514–515 (1941)—by means of "forgery."

Reversed and remanded with instructions to enter judgment for Appellant.

bank for payment and the drawee bank honors the check, and second, where an individual withdraws more money from his account than he knows will be in his account when all deposits credited to his account are cleared. 11 Couch On Insurance 2nd § 44:333–34 (1963).