## Will's Administrator, et al. v. George Wiedemann Brewing Company.

(Decided October 25, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Corporations—Capital Stock—Lost Certificates—Owner May Demand Duplicates.—The owner of a certificate of stock lost or stolen by no fault or fraud of his may, upon proper proof of the loss, require the corporation to issue to him a duplicate certificate.

2. Corporations—Capital Stock—Lost Certificates—Issuance of Duplicates.—Where the owner of certain stock certificates pledged them to a bank as collateral security for a loan, endorsing them in blank with power of attorney to any holder to transfer them, and the bank upon payment of the loan failed to return the certificates to her, claiming they were lost; though the certificates have not been heard of for sixteen years and the dividends have been regularly paid to her, her heirs or personal representative, such personal representative is not entitled to demand of the corporation duplicate certificates without complying with the latter's demand that he give a bond indemnifying it against any loss that might result to it from a future claimant and holder of the lost certificates.

3. Corporations—Capital Stock—Lost Certificates—Issuance of Duplicates.—The fact that a corporation has paid dividends, as declared, to the owner of stock of record on its books, claimed to have been lost, does not estop a subsequent lawful holder of the certificate of such stock to demand transfer of the stock to him; nor will such payments of dividends estop the corporation to require a bond indemnifying it against possibility of such demand, where the certificate has been lost and the owner of record on its books demands issuance of a duplicate certificate.

R. P. DIETZMAN and KAEBLER, PLATT & NIXON for appellants.

DOLLE, TAYLOR & O'DONNELL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellant, Arthur E. Hopkins, administrator of the estate of Bertha Will,

deceased, to compel by mandatory injunction the appellee, George Wiedemann Brewing Company, a corporation, to issue to him as such administrator a duplicate certificate for thirty paid up shares of its capital stock, of the par value of $500.00 each, in lieu of two certificates, numbered 77 and 92 respectively, for fifteen shares each, alleged to have been owned by the appellant's decedent, Bertha Will, at the time of her death and which, without fault upon her part, had been lost during her lifetime. It appears from the allegations of the petition that on the 30th day of July, 1900, and for several years prior thereto the appellant's decedent was the owner of thirty paid up shares of the capital stock of the appellee corporation, which were evidenced by two stock certificates numbered 77 and 92, respectively, for fifteen shares each, and that from the date of the issuance of these certificates, which was prior to the 30th day of July, 1900, down to the time of the institution of the action, they stood on the books of the appellee corporation in her name, and during the whole of the time referred to the dividends that were declared thereon were paid by appellee to her, her heirs or the administrator. The loss of the two stock certificates prior to the 30th day of July, 1900, is alleged in the petition, also the inability of the decedent before her death and that of her administrator since her death to find them, notwithstanding the diligent effort made by each of them for that purpose; and that they had not been found or recovered by them or either of them.

By its answer appellee admitted the original issuance of the two certificates of stock in question to the decedent, but put in issue their loss and alleged that during the lifetime of the decedent and on or about the 30th day of April, 1900, they were pledged by her and left with the German-American Bank of Rochester, New York, as collateral security for a loan made her by the bank, and that when so pledged and left by the decedent with the bank as collateral security for the loan mentioned, the two certificates were endorsed in blank by her with power of attorney to transfer the certificates to anyone who might become the holder thereof; and further, "that said bank subsequently went out of business and that its assets and liabilities were assumed by some other bank in said Rochester, N. Y. . . . ; that although the said Bertha Will subsequently discharged

and paid her indebtedness to said bank that the certificates which she pledged were not returned to her. Defendant says that it does not know who is the owner or holder of said certificates and that it cannot safely issue duplicates to take the place of said original certificates still outstanding unless and until said original certificates are presented to its secretary and cancelled in accordance with the rules, regulations and by-laws adopted by the defendant, all of which said rules, regulations and by-laws were in force and effect at the time said stock certificates were issued to said Bertha Will and all of which are still in force and effect and binding upon all the stockholders of the defendant. Defendant further states that if said original certificates of stock standing on its books in the name of said Bertha Will have been lost or destroyed (which fact defendant for want of sufficient knowledge or information to form a belief denies and asks the court to require strict proof thereof), that defendant is willing to issue duplicate certificates to the administrator of the estate of said Bertha Will, upon being sufficiently indemnified by plaintiffs with such security as to the court may seem just and reasonable against any claims of any parties who may now or hereafter have any right, title or interest in said outstanding certificates or stock."

The reply admits the deposit by the decedent of stock certificates Nos. 77 and 92 with the German-American Bank of Rochester, New York, as collateral security for a loan and does not deny their endorsement in blank by the decedent with her power of attorney thereon authorizing the transfer of the certificates by anyone who might become the holder thereof, and alleges that upon her payment to the bank of the loan for which the stock certificates had been pledged as collateral, the bank did not then produce or return to her the certificates, but claimed that they had been lost and could not be found, whereupon the bank, on her demand, executed to her a bond reading in part as follows: "Said bank covenants and agrees to indemnify and save said Bertha Will harmless against any claim growing out of the transfer or assignment by it of said certificates Nos. 77 and 92." It was further alleged in the reply that thereafter the German-American Bank went into liquidation and its assets were purchased by the Lincoln National Bank of Rochester, New York, and though diligent

search had been made both by the German-American Bank and the Lincoln National Bank for the certificates of stock, they had not been found by either of them and had never been returned to the owner.

By the amended petition filed to conform to the proof taken, the appellant alleged that the par value of the lost stock certificates was $500.00 per share and that the certificates were lost without fraud on his part or that of his decedent.

The evidence appearing in the record shows the decedent's and later her administrator's ownership of the two certificates of stock originally issued to the former by appellee, their deposit with the German-American Bank of Rochester, New York, as collateral for the loan obtained by the decedent from the bank and the following facts explanatory of the bank's alleged loss thereof: In 1899 or 1900 the German-American Bank had its bank building remodeled or repaired and during that time moved to temporary quarters in a grocery store nearby, where after remaining several months it moved back to its own building. The loan referred to had been made prior to this temporary change of quarters and when the bank returned to its old place of business in 1899 or 1900 it claimed to have discovered that these certificates were no longer among the papers of the bank, and that it was unable, after diligent search, to find them. Later on the loan was paid off but the stock certificates were never found or returned to the decedent. In 1906 the German-American Bank was consolidated with the Lincoln National Bank of Rochester, New York, and at the time of the liquidation search was again made for the missing stock certificates but they were not found.

In addition to the evidence referred to, it was agreed between the parties to the action that from the time of the loss of the original certificates, Nos. 77 and 92, down to the institution of the action, no claim was ever made on appellee with regard to the stock certificates by anyone except the decedent, during her lifetime, and by her three heirs at law and administrator after her death; and that all dividends which were declared during that period were paid either to the decedent, to the heirs mentioned or to the appellant as administrator.

Appellant refused to execute to appellee the bond of indemnity demanded by the latter. Upon the issues of fact and proof thus presented the circuit court by the

judgment rendered dismissed appellant's petition and awarded appellee its costs. From that judgment the former has appealed.

It is not contended by appellee nor was it held by the circuit court that the owner of a lost or stolen certificate of stock may not have a new certificate issued to him, but the sole question in the case was and is, on what terms should the appellee be required to issue to the appellant the new certificate of stock demanded in lieu of the two that were lost? Appellee insists that it should not be required to issue the new or a duplicate stock certificate to appellant without the execution by the latter of a bond with good security, indemnifying it against loss, and such was the conclusion reached by the circuit court. We have in this State no statute that can be said to have a controlling effect on the decision of the question here involved, nor are we aware of any case in which it has been passed on in this jurisdiction.

In 10 Cyc. 619 it is said:

"Share certificates, not being negotiable instruments, if such a certificate is lost or stolen from the owner, without fault on his part, his right to it is superior to that of any person who may acquire it by purchase for value from any other holder; and he may maintain against the corporation and the person who holds the stolen scrip an action to establish his right to it."

Again on page 620 it is said:

"In general, if the share certificate of a snareholder has been lost, and he or his alleged vendee claims of the corporation issue of a new certificate, the corporation will issue it at its peril, and is therefore, as elsewhere stated, entitled to demand indemnity before making such new issue."

In 4 Thompson on Corporations (2d ed.), section 3528, treating of lost certificates, it is said:

"The general rule—made so by statute in many states—is that the owner of a certificate lost or destroyed may compel the corporation to issue a new certificate, provided he properly secures the corporation from loss in case demand may be made upon it later by another claiming to be the owner or pledgee under such original certificate. An indemnity bond should be given where the lapse of time since the loss has not been so great as to exclude the danger of the reappearance of the certificate. . . ."

Some of the states of the Union have statutes on the subject. Indeed some of them, notably Ohio, have adopted what is known as the "Uniform Stock Transfer Act," which contains provisions in regard to lost certificates.

Although neither in form nor character is a stock certificate negotiable paper, it nearly approximates it where, as in the case of the lost certificates here involved they are endorsed in blank by the owner with power of attorney to transfer them to anyone who may obtain possession of them as holder, for such endorsement is a notification to all persons interested to know that whoever in good faith buys the stock and produces it to the corporation regularly assigned with power to transfer will be entitled to have the stock transferred to him. Indeed, it goes farther, for it assures the holder that the corporation will not transfer the stock to anyone not in possession of the certificates. The fact that these certificates were endorsed by the owner as stated clearly distinguishes this case from that of Guilford v. Western Union Tel. Co., 59 Minn. 332, cited in 4 Thompson on Corporations (2d ed.), section 3528, as supporting the statement therein made that an indemnity bond is not generally required where the loss has been for such a length of time as to preclude the likelihood of the appearance of another claimant. This case is also strongly relied on by counsel for appellant. It was therein held that the evidence being clear and satisfactory that the original certificate, *unassigned,* was lost over twelve years prior to the bringing of the action, during which time it had never been heard of and no other claimant for the stock or the dividends on it having appeared, the plaintiff was entitled to a new certificate without giving the bond of indemnity with surety demanded by the defendant corporation.

It appears from the facts stated in the opinion that the certificates of stock in question were lost by the owner himself upon his arrival in the city of New York and the next day he gave the defendant corporation notice of the loss and stopped transfer of them. Emphasis was placed upon the fact that the certificates were unassigned. Although the state of Minnesota has a statute which provides that "if the evidence is clear that said certificate has been lost or destroyed and it has not been heard of for a period of seven years, it shall be the duty of the said corporation to issue a new certificate without

indemnity," it was held, however, that the plaintiff was entitled to the relief asked independently of the statute, as upon the facts presented it was indisputably true, first, that the stock had been lost by the owner and second, that when lost it was unassigned. In the instant case it is admitted that the certificates of stock were endorsed by the owner with blank power of attorney thereon authorizing the holder to transfer the same or have them transferred on the books of the company, and when last seen by the owner they were in the possession of a bank which had the power under the endorsement mentioned to assign and dispose of them to someone else. It is true that the bank claims to have lost the certificates, but the circumstances under which it is claimed by the bank they were lost are not such, as to exclude the probability that they were assigned and delivered by the bank or some holder to a person or corporation who may yet declare himself or itself the claimant or owner of them.

In McNeil v. Tenth Nat'l Bank, 46 N. Y. 325, the owner appears to have pledged certain certificates with brokers to secure a loan. The certificates were endorsed by the owner with a blank power of attorney thereon authorizing the holder to transfer the same on the books of the company. The brokers wrongfully pledged the certificates to a third party to secure certain advances made them, and it was held that the third party to whom they were thus pledged had a good title to them as against the real owner who, by his act in giving the power of attorney when the stock was pledged, placed the apparent ownership of it in the brokers. Whether the rule there announced would be applied in this jurisdiction against appellant in behalf of a holder of the stock certificates claiming to have received them from the bank to which they were pledged by the decedent, under the power of attorney endorsed thereon, is not here material or necessary to be decided. The case is merely cited to show the possibility of litigation, if not liability, to which appellee may in the future be subjected, and also its right to be protected against any such risk by the giving by appellant of the bond of indemnity demanded of it. In other words, upon the state of case here presented appellee should be protected, by the giving of the bond of indemnity, even against suit and possible court costs and attorney's fees.

We quite agree with the following statements contained in the written opinion of the judge of the court below:

"The certificates of stock seem to have been lost but in a most unaccountable manner. They were left as collateral security with the bank in Rochester and disappeared from the bank vaults—at least such is the testimony of the cashier of the bank. This is the only property which the bank lost and it is inconceivable that the loss was not the result of dishonesty somewhere. In order to be available as collateral, power of attorney or some similar method of assignment must have been executed, and it was therefore possible for anyone into whose hands the certificates came to utilize them. Of course a thief could not pass title since the certificates are not negotiable in the sense that bills and notes are, but it is possible that a lawful holder might use them as collateral to a note and by prompt payment of interest keep the note alive for many years, and the payment of dividends to the holder as shown by the books of the corporation would work no estoppel. . . . If then the defendant corporation should issue duplicates to the plaintiffs and they should dispose of them, and later the original certificates should turn up in the possession of a lawful holder, the corporation must stand the loss unless it can follow up the plaintiffs and at the end of a law suit make them reimburse it. The court has no jurisdiction to determine in advance the laches of any party who may be in possession of the lost certificates. Such person might be able to show when the time comes reasonable grounds for his delay in presenting the original certificates for transfer. It must be kept in mind that the corporation did not have any part in losing the certificates. It did all that the law required of it when it issued the certificates originally, and it was for the owner to take care of the certificates when they had been once issued. Again, the holder of the certificates paid the note in bank without requiring the bank to produce the certificates or to account to her for the value of the property. The least she could have done or required of the bank was to furnish the bond to the defendant corporation for an issue of duplicate certificates. The bank owed her this duty and she should have required it."

The fact that the dividends paid upon the stock from time to time since its loss have been received by the de-

cedent, her heirs at law or personal representative is not, in our estimation, entitled to the importance appellant attaches to it, for they could not otherwise have been disposed of by the appellee corporation, as it could pay dividends to no one other than the holder of stock shown to be such by its books. Appellant is here seeking an extraordinary remedy, and while appellee is not averse to issuing to him the duplicate certificate demanded, it is its right in yielding to the demand to require that it be indemnified against any loss or risk that may result to it by reason of its doing so. In demanding indemnity it is but complying with a requirement of one of its by-laws, which was as well known to the original holder of the stock certificates when she received them and presumed to be as well known to the appellant, as to appellee.

In reaching the conclusion expressed we have not considered whether the lost stock certificates are instruments "transferable by delivery" in the meaning of section 7, Civil Code, which would compel of appellant the execution of an indemnifying bond as a condition precedent to his right to require of appellee the issual of the new or duplicate certificate of stock, as in our opinion, independently of the section of the Code, *supra*, the peculiar facts here presented entitle appellee to the protection that will be afforded it by the bond demanded; and equity demands that if appellant would avail himself of the injunctive relief for which he asks, he should in all fairness place the appellee in such situation as would relieve it of all future risk and expense. We do not mean to be understood as holding that in every case of demand for the issual of a duplicate stock certificate to replace a lost one, a bond of indemnity can be required by the corporation before issuing the duplicate, but only mean that the giving of such bond was necessary and properly required in the state of case here presented.

There being no error in the judgment of the circuit court, it is affirmed. Whole court sitting.