## Bringardner Lumber Co. v. Crockett's Adm'x.

March 21, 1947.

J. S. Forester, Judge.

E. B. Wilson for appellant.

W. T. Davis for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Judgment was entered in the Bell Circuit Court against appellee, Bringardner Lumber Company, a corporation, directing it to reissue 100 shares of its capital stock to the widow and heirs of the decedent, A. T. Crockett, without the execution of a bond. The suit was instituted pursuant to the provisions of Section 274.170 of the Kentucky Revised Statutes, which is that portion of the Uniform Stock Transfer Act concerning lost or destroyed certificates.

The decedent, A. T. Crockett, had for many years prior to his death been an employee of the Bringardner Lumber Company, and was owner of stock in the company in the amount of $10,000 par value. A few weeks before his death, Mr. Crockett had redeemed his stock certificate, which had been pledged at the First State Bank as security for a loan. Mr. Crockett, local manager for the company, had access to all its records and books and carried the key to a safety deposit box at the First State Bank listed in the name of Bringardner Lumber Company. After Mr. Crockett's death, when the deposit box was opened, there was found in the deposit box his personal papers in the nature of deeds, contracts and bonds, but his stock certificate failed to show up. There was also found in the box $4,000 in cash.

The appellee, Edna K. Crockett, administratrix of the estate of A. T. Crockett, deceased, brought this action to require the appellant to reissue the 100 shares of its stock to the widow and heirs as above stated. Judgment was entered in the February 1946 term of court directing the reissue upon execution of bond in the amount of $4,500, and the cause was continued on the docket for further orders.

It appears that the administratrix was unable to execute this bond. At the September term, 1946, on motion of appellee, a subsequent judgment was entered directing the reissue of the stock without the requisite bond. From that judgment this appeal is prosecuted.

Appellant argues two points on this appeal: (1) The second judgment of the circuit court is void, since the court had lost jurisdiction of the question to be decided. (2) The judgment is violative of the statute upon which the suit was instituted.

Under (1) appellant insists that the original judgment entered at the February term, 1946, was final with the end of the term in which it was entered, and, consequently, the subsequent judgment is a nullity. It is insisted that the procedure should have been under Sections 518-520 of the Civil Code of Practice to vacate and set aside the original judgment. House v. Rawlings, 296 Ky. 578, 177 S. W. 2d 562, is cited in support of that position. We need only call attention to the fact that the cause was continued on the docket. If such had not been the case, appellant's position would be well taken. Obviously the cause was continued for the purpose of doing all things necessary for the disposition of the subject matter. For instance, if, in the meantime, the stock certificate had been found, proper order or subsequent judgment could have then been entered. Appellee was not seeking a vacation of the judgment or a new trial as provided in the Sections of the Civil Code of Practice quoted above. There is no merit in appellant's contention relative to this point.

The second point raised, however, does have merit. Section 274.170, KRS, under which this action was prosecuted, provides for the reissue of stock "upon satisfactory proof of such loss or destruction and upon the giving of a bond with sufficient surety to be approved by the court." Before the adoption of the "Uniform Stock Transfer Act" similar procedure was required in order to obtain the reissue of certificates of stock in lieu of lost certificates. Even though we had no statutory provision relative to a requirement of bond, this court has held that bonds should be required in order to protect the corporation against loss or injury. In the case of Will's Adm'r v. George Wiedemann Brewing Co., 171 Ky. 681, 188 S. W. 778, 781, Ann. Cas. 1918E, 62, we find the following:

"We quite agree with the following statements contained in the written opinion of the judge of the court below:

" 'The certificates of stock seem to have been lost, but in a most unaccountable manner. They were left as collateral security with the bank in Rochester, and disappeared from the bank vaults—at least such is the testimony of the cashier of the bank. This is the only prop-

erty which the bank lost, and it is inconceivable that the loss was not the result of dishonesty somewhere. In order to be available as collateral, power of attorney, or some similar method of assignment, must have been executed, and it was therefore possible for anyone into whose hands the certificates came to utilize them. Of course a thief could not pass title, since the certificates are not negotiable in the sense that bills and notes are, but it is possible that a lawful holder might use them as collateral to a note, and by prompt payment of interest keep the note alive for many years, and the payment of dividends to the holder as shown by the books of the corporation would work no estoppel. * * * If, then, the defendant corporation should issue duplicates to the plaintiffs and they should dispose of them, and later the original certificates should turn up in the possession of a lawful holder, the corporation must stand the loss, unless it can follow up the plaintiffs and at the end of a law suit make them reimburse it. The court has no jurisdiction to determine in advance the laches of any party who may be in possession of the lost certificates. Such person might be able to show when the time comes reasonable grounds for his delay in presenting the original certificates for transfer. It must be kept in mind that the corporation did not have any part in losing the certificates. It did all that the law required of it when it issued the certificates originally, and it was for the owner to take care of the certificates when they had been once issued. Again, the holder of the certificates paid the note in bank without requiring the bank to produce the certificates or to account to her for the value of the property. The least she could have done or required of the bank was to furnish the bond to the defendant corporation for an issue of duplicate certificates. The bank owed her this duty, and she should have required it.' ''

KRS 274.170 is fully in line with the opinion above. In the instant case, only a few weeks before the death of A. T. Crockett, he had redeemed this stock certificate which he had pledged at the bank. The evidence seems to indicate that the book value of this stock was approximately $4,000 or $4,500. In the safety deposit box was found cash in the sum of $4,000. Although diligent effort has been made to locate the stock, and apparently same may be lost, it is not entirely beyond the bounds

of possibility that the stock could have been negotiated or pledged somewhere else. Should a bona fide holder later appear, the corporation would not be relieved from liability in damages to such person without notice of the above proceedings. This statute may work a hardship on these heirs who are entitled to the stock, but certainly the responsibility of the loss of the certificate can in no way be placed upon the appellant. The appellant certainly has a right to ask for protection under the provisions of the statute as well as under the direction of the court. Appellant concedes the right of appellee to have the stock reissued and indicates willingness at all times to reissue the stock upon compliance with the statute above in posting the requisite bond.

The court below was without right to direct the reissue of stock without the required bond pursuant to the section of the statutes above.

Wherefore, the judgment is reversed with directions to require appropriate bond for the protection of appellant.