RENDERED: MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1496-MR

JOSEPHINE MCCLURE,
INDIVIDUALLY, AS
ADMINISTRATRIX OF THE ESTATE
OF JAMES E. MCCLURE, AND AS
ADMINISTRATRIX OF THE ESTATE
OF CHARLES MCCLURE; EDWARD
MCCLURE; NANCY MCCLURE
DAVIS; RICHARD MCCLURE;
NATHAN MCCLURE; WANDA
MCCLURE DRY; MARK MCCLURE;
ESTATE OF VERLA MCCLURE;
ESTATE OF PHILIP L. MCCLURE;
AND MARY ANN MCCLURE
COLLINS, AS ADMINISTRATRIX OF
THE ESTATE OF STANLEY R.
MCCLURE, SR.                                                                    APPELLANTS


                        APPEAL FROM RUSSELL CIRCUIT COURT
v.              HONORABLE VERNON MINIARD, JR., JUDGE
                        ACTION NO. 10-CI-00697


MCCLURE CORPORATION; JERRI
MCCLURE FRENCH,
INDIVIDUALLY, AS REGISTERED
AGENT FOR MCCLURE
CORPORATION, AND AS
EXECUTRIX OF THE ESTATE OF
STANLEY MCCLURE, JR.; MITZA

MCCLURE SMITH, AS EXECUTRIX
OF THE ESTATE OF STELLA SIMS
MCCLURE; LATISHA MCCLURE,
INDIVIDUALLY AND AS
EXECUTRIX OF THE ESTATE OF
BART MCCLURE; AND SUSAN
MCCLURE MAYBERRY                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND MCNEILL, JUDGES.

DIXON, JUDGE:  Josephine McClure, individually, and as Administratrix of the

Estates of James E. McClure and Charles McClure; Edward McClure; Nancy

McClure Davis; Richard McClure; Nathan McClure; Wanda McClure Dry; Mark

McClure; Estates of Verla McClure and Philip L. McClure; and Mary Ann

McClure Collins, as Administratrix of the Estate of Stanley R. McClure, Sr.,

appeal from several orders entered by the Russell Circuit Court.  Following a

careful review of the record, briefs, and law, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

This case consists of many parties with varying versions of events and

interpretations of the law.  In an effort to provide clarity, rather than promote

confusion, we choose to discuss only the most relevant facts to this appeal and

avoid recitation of extraneous information to the greatest extent possible. Our aim is neither to oversimplify nor overcomplicate the facts or applicable law herein.

According to its Articles of Incorporation, McClure Corporation was formed and organized in February 1962 "[t]o engage in the business[] of farming; mining of gravel and any other product; buying, selling and leasing of farm lands; buying, selling, manufacturing or leasing all types of property and products, whether or not related to any of the foregoing purposes." In this document, Stanley was issued 250 shares of corporate stock. Apparently, the sole property owned by the corporation consisted of approximately 324 acres of land originally owned by Stanley, Sr., and Verla, and transferred to the corporation on April 7, 1962. Stanley used this transfer as consideration for the 250 shares of McClure Corporation stock previously issued to him. Stanley then, in turn, assigned half of these shares to his wife, Verla. These shares were issued via the corporation's stock certificate number one on April 7, 1962. On that date, the first meeting of stockholders was held, and bylaws were adopted. Stanley, Verla, James, and Leon were recorded as present. While the minutes of that meeting indicate each of the four present was given 250 votes, no accompanying recorded shares were issued to Verla, James, or Leon. In fact, the minutes authorize the issuance of only 250 shares to Stanley and Verla in consideration of the ownership transfer of their farm.

Subsequently, and inexplicably, on April 27, 1962, the original stock issued to Stanley and Verla via certificate number one was cancelled, as noted in writing on the face of the certificate. Instead, 15 shares were issued to each of Stanley and Verla's seven children,[1] via stock certificate numbers two through eight. Stock certificate number nine certified 145 shares of McClure Corporation stock was reissued to Stanley and Verla, thus distributing 250 shares of corporate stock.

Thereafter, corporate minutes provide little information about its operation or ownership of its stock in the ensuing years. On June 5, 1972, annotations on the stock certificates indicate that all McClure Corporation stock was transferred to Bobby, Leon, and Willis.

Subsequently, on November 20, 1986, after Leon passed away, his widow, Janis, transferred his shares to Bobby and Willis, who then became the only two remaining stockholders of McClure Corporation.

Eventually, in May 1990, Bobby filed a petition for dissolution of McClure Corporation. As a result of an agreement reached during that litigation,

---

[1] Stanley ("Bobby") McClure, Jr.; James McClure; Leon McClure; Willis McClure; Philip McClure; Gladys Carnes; and Mary Ann Grider.

Willis transferred all his shares to Bobby, who then became the sole shareholder on November 22, 1991.[2]

Over 19 years later, on December 29, 2010, this action was filed alleging conversion, fraud and misrepresentation by concealment, fraudulent conveyances, breach of fiduciary duties, and requesting a declaration of rights. It is unclear from the record what precipitated this action. Nevertheless, the plaintiffs (the Estates of Stanley and Verla; their only living children, Gladys and Mary, as well as the Estates of Phillip and James; James's widow, Josephine; and James's living children—Edward, Nancy, Richard, Nathan, Wanda, and Mark—and the Estate of his son, Charles) filed this declaration of rights suit against the Estates of Bobby and Leon; Willis's widow, Stella;[3] Bobby's living children, Jerri and Susan, and the Estate of his son, Bart, as well as Bart's widow, Latisha;[4] and McClure

---

[2] On February 15, 1999, Bobby purported to convey 333 shares of McClure Corporation stock to each of his three children: Jerri McClure, Susan Mayberry, and Bart McClure. Another lawsuit is pending in Russell Circuit Court regarding the changes of ownership of shares which occurred after this date. On December 27, 1999, Bobby purportedly transferred all shares to Jerri. On December 27, 2000, Jerri's siblings transferred any shares they may or may not have had to Jerri, making her the sole stockholder of McClure Corporation. For purposes of this litigation, no proof has been presented that more than 250 shares were ever subscribed to, paid for, or issued.

[3] Mitza McClure Smith is the only child of Willis and Stella. Willis passed away long before this litigation began. Stella was originally a defendant to this lawsuit but has also since passed. Consequently, Mitza, as the administratrix of her mother's estate, was substituted as a defendant in this action.

[4] Latisha has also been referred to as "Lutisha" in this action. We choose to refer to her here as her name appears in the complaint.

Corporation, alleging defendants had fraudulently obtained all shares of McClure Corporation to the plaintiffs' detriment. The plaintiffs asked the trial court to declare them owners of shares of McClure Corporation stock and to grant them access to the corporate records.

On August 7, 2019, Mitza moved the trial court to dismiss the action or, in the alternative, for summary judgment. She filed an affidavit in conjunction with her motion asserting that Bobby and Willis were the sole shareholders of McClure Corporation after November 20, 1986. On August 12, 2019, Jerri and McClure Corporation also moved the trial court to dismiss the action or, in the alternative, for summary judgment. They rely on the agreed order in the corporate dissolution case in which Bobby became the sole shareholder on November 22, 1991, as proof the plaintiffs in the case herein have no claim to McClure Corporation. On September 4, 2019, after the matter was briefed and argued, the trial court granted Jerri's and McClure Corporation's motion for summary judgment. Thereafter, on September 10, 2019, the trial court granted Mitza's motion for summary judgment. This appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

-6-

that the moving party is entitled to a judgment as a matter of law." CR[5] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App. 2000)).

## ANALYSIS

Appellants maintain the trial court erred by granting Appellees' motions for summary judgment. Their first basis for attacking the trial court's orders is that the trial court initially erred by finding stock certificate number one, issued to Stanley and Verla on April 7, 1962, was cancelled and that its shares were reissued. They assert the stock issued in certificate number one was never actually cancelled and is to be treated as lost stock, citing *Will's Administrator v. George Wiedemann Brewing Company*, 171 Ky. 681, 188 S.W. 778 (1916). That case, however, is clearly not analogous to the case herein as the record is replete with copies of certificate one, which was never lost. In fact, a copy of that certificate with the notation "Cancelled 4/27/62" is attached as Exhibit 5 to

---

[5] Kentucky Rules of Civil Procedure.

Appellants' brief.  Moreover, no additional payment or subscription was made for the second set of 250 stocks to be issued.  Thus, there is a strong inference 250 shares were issued only once.

Appellees cite *C.I.R. v. Landers Corporation*, 210 F.2d 188 (6th Cir. 1954), in support of the trial court's finding that stock certificates two through nine were simply a replacement and reissuance of stocks purchased and later cancelled via certificate number one.  In relevant part, that Court held:

> The 'cancellation' of the paper certificates did not cancel the stock.  It is the usual practice for old certificates to be surrendered by a purchaser to the corporation and such old certificates are either marked cancelled or treated as cancelled thereafter by the corporation who recognizes the purchaser as the new stockholder.  The new purchaser becomes the stockholder in substitution for the selling stockholder.  The issuance of a new certificate is not necessary to create the status of stockholder, the certificate being merely the evidence of the relationship.

*Id.* at 192.  Here, certificate number one was surrendered to McClure Corporation, and its cancellation was noted on its face on the date the replacement stocks and new certificates were issued.  Although the purchaser and payment remained the same, new certificates were issued to evince the new ownership of Stanley and Verla's children of corporate stock and the respective number held by each shareholder.  "To hold that these formalities, or the lack of them, should change the actual character of the transaction, subordinates substance to form and ignores realities."  *Knop v. United States*, 234 F.2d 760, 765 (8th Cir. 1956) (citation

omitted).  Accordingly, the trial court did not err in its holding that stock certificate one was, in fact, cancelled and stock certificates two through nine represent the reissuance of the same stock to the designated shareholders.

Appellants next contend Appellees have presented no evidence to support their arguments, which are based upon pure speculation.  Appellants' contentions are not supported by the record, however.  Corporate documents attached as exhibits to the complaint and those produced during discovery (such as copies of the stock certificates and corporate meeting minutes) and other documents that are a matter of public record (such as the agreed order regarding stock ownership in the corporate dissolution case) all serve as ample and reliable evidence supporting the arguments of Appellees and the grants of summary judgment by the trial court.

Appellants further argue the trial court erred by ignoring disputed facts in granting summary judgments in favor of Appellees.  More specifically, they argue summary judgment was improper due to genuine issues of material fact regarding the existence and ownership of 750 additional shares of McClure Corporation stock.  However, not one scintilla of reliable evidence has been produced that these additional stocks were ever subscribed to or paid for.  Instead, Appellants rely on an unsworn document, titled Share Transfer Ledger, to support their claims regarding the existence of these additional shares.  It is unknown who

authored this document or when it was created. Furthermore, it is beyond dispute the document is riddled with inaccuracies and mistakes. Appellants also rely on an excerpt from Jerri's deposition, taken out of context, to support their assertion that 1,000 shares of corporate stock were issued. What is clear is that no stock certificates were ever issued to James and Leon on April 7, 1962. The order of stock certificate numbers clearly establishes this fact. After the first certificate was cancelled, the very next number—two—was issued to Mary Ann. Thus, sequentially, no stock certificates were issued in between. Consequently, there is simply insufficient evidence to survive Appellees' well-supported motions for summary judgment on this issue.

Appellants' final argument is their causes of action were neither barred by statutes of limitation nor laches. However, Appellants point to no specific event giving rise to their concerns of fraud. KRS[6] 413.130(3) provides:

> In an action for relief or damages for fraud or mistake, referred to in subsection (11) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.

---

[6] Kentucky Revised Statutes.

Here, ownership of McClure Corporation stock became a matter of public record in the corporate dissolution suit. On November 22, 1991, the trial court entered an agreed order stating Bobby was the sole owner of all the corporation's stock. Thus, the discovery clock began ticking no later than November 22, 1991. The facts became a matter of public record, and knowledge will be ascribed with the entry of the agreed order. Plaintiffs must exercise ordinary diligence to discover fraud. *Dye v Holland*, 67 Ky. 635, 1869 WL 3938 (1868); *Skaggs v Vaughn*, 550 S.W.2d 574 (Ky. App. 1977). Where fraud is discoverable as a matter of public record, ignorance of such public record does not prevent the running of the statute of limitations. *Stepp v. Stepp*, 288 S.W.2d 337 (Ky. 1956). This suit was filed over 19 years after ownership of the stock was judicially determined. Therefore, Appellants' fraud claims are clearly time-barred under the applicable statutes of limitations.

Concerning laches, it is well-established:

"Laches" in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of

conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574, 575 (1938) (citations omitted). Appellants have not and cannot offer any justification for their unreasonable delay in bringing the instant action. Moreover, most—if not all—of the parties with knowledge of issuance of McClure Corporation stock are no longer living. As such, the trial court did not err in dismissing Appellants' claims.

As a final note, we observe Appellants' failure to present any other arguments on appeal constitutes abandonment and/or waiver of those issues. "An appellant's failure to discuss particular errors in his brief is the same as if no brief at all had been filed on those issues." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979) (citation omitted). Thus, we need not discuss those issues.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders of the Russell Circuit Court are AFFIRMED.


ALL CONCUR.

BRIEF FOR APPELLANTS:

Wanda McClure Dry
Danville, Kentucky

BRIEF FOR APPELLEES, JERRI
MCCLURE AND MCCLURE
CORPORATION:

R. Aaron Hostettler
London, Kentucky

BRIEF FOR APPELLEE, MITZA
MCCLURE SMITH:

H. K. Cooper
Jamestown, Kentucky